BRUCE M. LANDON
Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
Telephone: (907) 271-5452
Facsimile: (907) 271-5827
Email: bruce.landon@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| MINCHUMINA NATIVES INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  4:04-cv-0027-CV (JWS) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BRIEF OF DEFENDANT ON CAPACITY ISSUES

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.  THERE IS NO STATUTORY AUTHORITY FOR THE REINSTATEMENT OF PLAINTIFF
     BECAUSE MINCHUMINA NATIVES INCORPORATED WAS NOT ORGANIZED AS
     A NATIVE VILLAGE CORPORATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.  A CERTIFICATE OF REINSTATEMENT ISSUED WITHOUT STATUTORY AUTHORITY
      IS  WITHOUT  EFFECT  AND  CANNOT  CREATE  A  CAPACITY  TO  SUE  IN
      MINCHUMINA NATIVES ASSOCIATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  THE FORMATION OF THE NON-PROFIT ENTITY DOES NOT ALTER PLAINTIFF'S
       LACK OF CAPACITY TO BRING THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  ANSWERS TO THE QUESTIONS POSED BY THE NINTH CIRCUIT . . . . . . . . . . . . 10

        A.   Which entity did the district court dismiss from the action below: the for-profit
              Minchumina Natives Incorporated or the non-profit Minchumina Natives, Inc.?  Or
              were both dismissed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.  Which of the two entities – the for-profit Minchumina Natives Incorporated or the non-
             profit Minchumina Natives, Inc. – was reinstated by the state in 2005? . . . . . . . 11

        C.  Was the reinstatement accomplished pursuant to A.S. § 10.06.960(k)(2005) of the Alaska
             Corporations Code?  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.  Was the original, for-profit organization organized as a "Native village corporation" or
             a "Native group corporation"? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        E.  Whether an improper reinstatement affects the question of capacity. . . . . . . . . . . . 12

        F.  What is the legal effect of the reinstatement?  In other words, does the current corporate
             status of Lake Minchumina Natives, Inc., apply retroactively? . . . . . . . . . . . . . . 12

V.  CERTIFICATION TO THE SUPREME COURT OF ALASKA IS NOT NECESSARY
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TABLE OF AUTHORITIES

FEDERAL CASES

Broughton Lumber Company v. Columbia River Gorge Com'n, 975 F.2d 616 (9th Cir. 1992) . . 9

Fassett v. Delta Kappa Epsilon (New York), 807 F.2d 1150 (3rd Cir. 1986) . . . . . . . . . . . . . . 13

Hills Motors, Inc. v. Hawaii Automobile Dealers' Ass'n, 997 F.2d 581 (9th Cir. 1993) . . . . . . . 7

Holman v. Laulo-Rowe Agency, 994 F.2d 666  (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 9

Keene Corporation v. United States, 508 U.S. 200 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Neirbo Company v. Bethlehem Shipbuilding Corporation, 308 U.S. 165 (1939) . . . . . . . . . . . . 9

Oliver v. Sealaska, Corp., 192 F.3d 1220 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

R.V. McGinnis Theatres & Pay T.V. Inc. v. Video Independent Theatres, 386 F.2d 592 (10th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

Southern Pacific Transportation Company v. City of Los Angeles, 922 F.2d 498 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STATE CASES

Baltazor v. Walden, 459 So.2d 711 (La. App. 4 Cir., 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Beavers v. Recreation Association of Lake Shore Estates, Inc., 130 S.W.3d 702 (Mo. Ct. App, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Gerik-Jones, Inc. v. Timberline Industries, Inc., 840 P.2d 999 (Alaska 1992) . . . . . . . . . . . . . 13

FEDERAL STATUTES

43 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

43 U.S.C. § 1602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 U.S.C. § 1602(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 U.S.C. § 1602(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

43 U.S.C. § 1602(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 U.S.C. § 1606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 U.S.C. § 1607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 U.S.C. § 1607(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 U.S.C. § 1613(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

43 U.S.C. § 1613(h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


STATE STATUTES

A.S. § 10.06.218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A.S. § 10.06.633(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.S. § 10.06.633(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.S. § 10.06.633(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 12

A.S. § 10.06.633(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 12

A.S. § 10.06.633(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

A.S. § 10.06.678(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.S. § 10.06.960(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 11, 13, 12

A.S. § 10.06.960(p)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.S. § 38.05.275(B)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATE RULES

Alaska Rule of Appellate Procedure 407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

INTRODUCTION

This matter is before the Court on remand from the Ninth Circuit.  This Court had dismissed this action after finding that Plaintiff lacked the capacity to sue because it had been involuntarily dissolved by the State of Alaska.  On appeal, plaintiff argued that it now has the capacity to sue because (1) after this Court issued its decision, plaintiff's corporate status was reinstated by the State, and (2) the reinstatement was pursuant to a 2005 amendment to state law that applies the corporation's newly reinstated status retroactively.  U.S. Court of Appeals, Memorandum, August 29, 2006 at 2**.**  The Circuit found the record before it "incomplete in several respects" and remanded to this Court to "determine the capacity question in light of the purported reinstatement."  *Id.*

The Circuit identified "at least five questions" this Court would "need to answer" (Memorandum at 2), but did not limit this Court to those five questions.  *Id.* at 8.  The Circuit also noted that "[i]n clarifying these matters, the district court may find it necessary, or appropriate to certify some or all of these questions to the Alaska Supreme Court."  *Id.*

Defendant files this brief pursuant to this Court's Order from Chambers filed December 19, 2006, Docket # 43.  In this brief, we demonstrate that plaintiff lacks capacity to bring this action.  Although we do not believe that the logical legal analysis necessarily follows from the specific questions posed by the Ninth Circuit, we provide an answer to each of those questions.  Finally, we show that it is unnecessary to certify the questions to the Alaska Supreme Court.

BACKGROUND

The Alaska Native Claims Settlement Act ANCSA, 43 U.S.C. § 1601 *et seq.,* settled the aboriginal claims of Natives in Alaska.  In extinguishing aboriginal claims, Congress provided

for payments of approximately one billion dollars and 44 million acres of land to Alaska Natives. *Oliver v. Sealaska, Corp.,* 192 F.3d 1220, 1223 (9th Cir. 1999). The majority of those benefits were not made to individual Alaska Natives, but to Native corporations. *Id.* ANCSA provided for four types of Native corporations – Native Regional Corporations (43 U.S.C. § 1606); Native Village Corporations, (43 U.S.C. § 1607); Native Urban Corporations (43 U.S.C. § 1613(h)(3) and Native Group Corporations (43 U.S.C. § 1613(h)(2)).

ANCSA defines "Native Corporation" to mean "any Regional Corporation, any Village Corporation, any Urban Corporation, and Group Corporation." 43 U.S.C. § 1602(m). ANCSA defines "Group Corporation" to mean "an Alaska Native Group Corporation organized under the laws of the State of Alaska as a business for profit or nonprofit corporation to hold, invest, manage and/or distribute lands, property, funds, and other rights and assets for and on behalf of members of a Native group in accordance with the terms of this chapter." 43 U.S.C. § 1602(n). ANCSA defines "Native group" to mean "any tribe, band, clan group, village, community or village association of Natives in Alaska composed of less than twenty-five Natives, who comprise a majority of the residents of the locality." 43 U.S.C. § 1602 (d).

In contrast, ANCSA defines "Village Corporation" to mean "an Alaska Native Village Corporation organized under the laws of the State of Alaska as a business for profit or nonprofit corporation to hold, invest manage and/or distribute lands, property, and other rights and assets for and on behalf of a Native village in accordance with the terms of this chapter." 43 U.S.C. § 1602(c). Unlike a Native group, a Native village must have been "composed of twenty-five or more Natives." *Id.*

Alaska statutes likewise recognize the existence of these four types of Native corporations. A.S. § 38.05.275(B)(2).

ANCSA requires Native villages and groups to organize under the laws of the State of Alaska. 43 U.S.C. § 1607(a) (villages); 43 U.S.C. § 1613(h)(2) (groups). In 1975, Minchumina Natives Incorporated filed Articles of Incorporation under the provisions of the Alaska Business Corporation Act. Def. Exh. 1. The purposes of the corporation include:

> Section 1. To act as a corporation for a *Native Group* under the provisions of ANCSA for the Native community of Lake Minchumina, as defined in Sections 3(d) and Section 14(h)(2) of ANCSA. (Emphasis added).

On November 6, 1975, the State of Alaska issued a Certificate of Incorporation to Minchumina Natives Incorporated as a for-profit corporation. Def. Exh. 2.

Alaska law provides for the involuntary dissolution of corporations for a variety of causes, A.S. § 10.06.633(a), and provides further that "[u]pon the issuance of the certificate of involuntary dissolution, the existence of the corporation ceases," A.S. § 10.06.633(d). With one exception not relevant here, "[a] corporation that is dissolved voluntarily or involuntarily may not commence a court action." A.S. § 10.06.678(b).

Alaska law provides a two-year period in which an involuntarily dissolved corporation may be reinstated. A.S. § 10.06.633(e). In 1980, the Attorney General of Alaska concluded that Alaska corporations, including Native corporations could not be reinstated after the expiration of the two-year period in A.S. § 10.06.678(b). 1980 Alaska, AG LEXIS 609, 1980 Op. (Inf) Atty Gen. Alaska, Def. Exh. 3. Subsequently, the Alaska legislature enacted A.S. § 10.06.633(I), which allowed a corporation "organized as a *Native corporation* under the Act, that has been

involuntarily dissolved," (emphasis added) to be reinstated within one year of June 29, 1994. The statute provided that "Native corporation" has the same meaning as in ANCSA 43 U.S.C. § 1602(m).  A.S. § 10.06.960(p)(2).

On April 8, 2005, when this Court issued its order dismissing this action because of plaintiffs' incapacity to sue, Alaska law additionally provided that an involuntarily dissolved corporation that had been organized as a "Native village corporation" under ANCSA could be reinstated on or before December 31, 2003.  A.S. § 10.06.960(k).  Alaska subsequently amended that provision such that, effective July 15, 2005, involuntarily dissolved corporations that had been organized as Native Village corporations under ANCSA could be reinstated on or before December 31, 2006.  A.S. § 10.06.960(k).

As shown by the attached Certificate of Dissolution (Exh. 9) from the State of Alaska Branch of Corporations, Minchumina Natives Incorporated was involuntarily dissolved on September 20, 1993.   Minchumina Natives Incorporated was not reinstated within the two-year period set forth in A.S. § 10.06.633(e).

In December 2004, three individuals filed with the State of Alaska articles of incorporation in an attempt to create a new non-profit corporation. Def. Exh. 4.  The State issued a certificate of incorporation for the non-profit corporation on January 27, 2005.  Def. Exh. 5. That certificate of incorporation gives the name of the non-profit corporation as Minchumina Natives, Inc. *Id.*

On November 21, 2005, members of plaintiff filed papers with the State seeking reinstatement of the for-profit entity Minchumina Natives Incorporated.  Def. Exh. 6.   Those papers did not indicate the statutory authority under which the reinstatement was sought. *Id.*  On

the same day, the State issued a Certificate of Reinstatement purporting to reinstate the for-profit

corporation, under the new name Lake Minchumina Natives, Inc.  Def. Exh. 7,8[1] .  The certificate

of reinstatement does not state the authority under which it was issued.  Def. Exh. 7.   Nor has

defendant been able to find any record that the State made a determination of the authority under

which the reinstatement was made.

ARGUMENT

I.  THERE IS NO STATUTORY AUTHORITY FOR THE REINSTATEMENT OF
PLAINTIFF BECAUSE MINCHUMINA NATIVES INCORPORATED WAS NOT
ORGANIZED AS A NATIVE VILLAGE CORPORATION

As set forth in the background section, there are three provisions of Alaska law

authorizing the reinstatement of involuntarily dissolved business corporations.  None of those

provisions authorized the reinstatement of Minchumina Natives Incorporated.  Reinstatement is

authorized under A.S. § 10.06.633(e) only within two years of dissolution.  Minchumina Native

Incorporated was dissolved on September 20, 1993.  Def. Exh. 9.  The purported reinstatement

did not occur until more than twelve years later on November 21, 2006.  Def. Exh. 7.

Reinstatement is authorized under A.S. § 10.06.633(I) only within one year of June 29, 1994,

more than a decade before the purported reinstatement.

Contrary to plaintiff's contentions, A.S. § 10.06.633(k) did not authorize the purported

reinstatement of the for-profit entity.  Unlike  A.S. § 10.06.633(I), which authorizes the

---

[1]         Given the close resemblance of the names of the for-profit and non-profit entities and the
name change of the for-profit entity at the time of its purported reinstatement, this memorandum
will specify which of the two entities is referred to with regard to their profit status rather than
their name.

restatement of all four types of Native corporations, A.S. § 10.06.633(k) only authorizes the

reinstatement of "Native village corporations".

> Notwithstanding (i) of this section and AS 10.06.633(e), a
> corporation *that is organized as a Native village corporation under
> [ANSCA]*, that has been involuntarily dissolved by the
> commissioner under AS 10.06.633, and that has failed to apply for
> reinstatement during the period established under AS 10.06.633(e)
> may be reinstated under AS 10.06.633(e) on or before December
> 31, 2006. The reinstated corporation and its shareholders have all
> of the rights, privileges, liabilities, and obligations that would have
> applied to them if the corporation had not been dissolved, and all
> corporate and shareholder actions taken during the period of
> dissolution are considered to be as valid as if dissolution had not
> occurred.

A.S. § 10.06.633(k) (Emphasis added).

The statute is unambiguous. It has no application to Native group corporations.

Minchumina Natives Incorporated is without question a Native group corporation. As set forth

in the background section, according to its own Articles of Incorporation, Def. Exh. 1,

Minchumina Natives Incorporated organized in order "to act as a corporation for a *Native Group*

under the provisions of ANCSA." (Emphasis added), Indeed, it would have been impossible for

Minchumina Native Incorporated to have organized as a Native village corporation pursuant to

ANCSA, because ANCSA requires that Native villages have 25 or more members. The for-

profit entity has only seven members. Affidavit of Carol Lee Gho, Def. Exh. 10.

   II. A CERTIFICATE OF REINSTATEMENT ISSUED WITHOUT STATUTORY
AUTHORITY IS WITHOUT EFFECT AND CANNOT CREATE A CAPACITY TO SUE IN
MINCHUMINA NATIVES ASSOCIATION

   Where, as here, state officials have issued a certificate of reinstatement without statutory

authority to do so, the certificate is without legal effect and may be collaterally challenged.

*Beavers v. Recreation Association of Lake Shore Estates, Inc.,* 130 S.W.3d 702 (Mo. Ct. App, 2004) (where state statute authorized reinstatement only within ten years, certificate of reinstatement issued ten years and three months after forfeiture of corporate rights was without legal effect and could be attacked collaterally); *R.V. McGinnis Theatres & Pay T.V. Inc. v. Video Independent Theatres,* 386 F.2d 592 (10th Cir. 1967) (dissolved corporation had no capacity to sue where there was no statutory authority for Secretary of State's purported reinstatement); see also, *Hillis Motors, Inc. v.  Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581 (9th Cir. 1993) (recounting that district court had determined that plaintiff was without capacity to sue because its certificate of reinstatement "had no effect" because it was not authorized by state statute, but deciding the case on other grounds); *Baltazor v. Walden,* 459 So.2d 711 (La. App. 4 Cir., 1984) (allowing collateral challenge that there was no statutory authority for certificate of reinstatement, but concluding that such authority existed in that case).  The two threads running throughout these cases is that, where the state official "*has* the authority to issue a rescission of forfeiture and does so, private individuals may not collaterally attack the corporate existence of the corporation" but may do so when the state official "*did not* have the statutory authority to do so."  *Beavers v. Recreation Ass'n of Lake Shore Estates, Inc.,* 130 S.W.3d at 711 (emphasis in original).  The "revival of a corporation depends on statutory authority.  *R.V. McGinnis Theatres & Pay T.V., Inc.  v. Video Independent Theatres,* 386 F.2d at 594.  Where corporate existence has been extinguished by an official act taken under a statute of the state which created the corporation, reinstatement must have similar statutory support.  *Id.*  595.

This well-established case law is not altered by A.S. § 10.06.218.[2]  That section deals with the conclusive effect of a "certificate of incorporation," not of a certificate of reinstatement.  Indeed, the provisions of the section preclude any attempt to interpret "certificate of incorporation" to include certificates of reinstatement.  A.S. § 10.06.218 provides that "corporate existence begins on the issuance of the certificate of incorporation."  State law makes clear that corporate existence *does not* begin on the issuance of a certificate of reinstatement.  To the contrary, a certificate of reinstatement relates back in time before its issuance.  – "The reinstated corporation and its shareholders have all the rights privileges, liabilities, and obligations that would have applied to them if the corporation had not been dissolved, and all corporate and shareholder actions taken during the period of dissolution are considered to be as valid as if dissolution had not occurred."  A.S. § 10.06.960(k).  Moreover, the certificate of incorporation is conclusive evidence that "all precedent conditions required to be performed by the incorporators have been satisfied and that the corporation has been incorporated."  A.S. 10.06.218.  The incorporators take no steps with regard to reinstatement.  Neither is there an issue of whether the purportedly reinstated for-profit corporation had been incorporated.  Rather the question is whether it has been properly reinstated following its dissolution.

---

[2]     **Sec. 10.06.218 Effect of issuance of certificate of incorporation**.  The corporate existence begins on the issuance of the certificate of incorporation.  That certificate is conclusive evidence that all precedent conditions required to be performed by the incorporators have been satisfied and that the corporation has been incorporated.  Issuance does not effect the right of the state to bring a proceeding to cancel or revoke the certificate or for involuntary dissolution of the corporation.  The doctrines of de jure compliance, de facto corporations, and corporations by estoppel are abolished.

MNI v USDOI 4:04-cv-0027 (JWS)
Def. Capacity Brief                          8

As has been shown, the purported reinstatement has no legal effect.  Therefore, the plaintiff for-profit entity,  Minchumina Native Incorporated is without authority to bring this action.

III.  THE FORMATION OF THE NON-PROFIT ENTITY DOES NOT ALTER PLAINTIFF'S LACK OF CAPACITY TO BRING THIS ACTION.

The Complaint in this action was filed on October 6, 2004.  At that time, no attempt had been made to incorporate the new non-profit entity, Minchumina Natives, Inc.  The certificate of incorporation for the non-profit entity was issued on January 27, 2005.  Because the non-profit organization did not come into existence until well after the filing of the complaint, the non-profit cannot be considered the plaintiff designated in the complaint.[3]  The subsequent incorporation of the non-profit corporation cannot undermine the correctness of this Court's order dismissing this action for lack of standing due to plaintiff's lack of capacity to sue.

First, constitutional standing goes to the jurisdiction of the court.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992).  The Supreme Court has held that jurisdiction of the federal courts depends on the facts which exist on the date the action is commenced.  *Keene Corporation v. United States*, 508 U.S. 200, 206 (1993); *Lujan v. Defenders of Wildlife*, 504 U.S. at 569 n. 4.  If jurisdiction is absent initially, the parties may not subsequently create subject matter jurisdiction. *Lujan v. Defenders of Wildlife; Neirbo Company v. Bethlehem Shipbuilding Corporation*, 308 U.S. 165, 167 (1939); *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 n. 1 (9th Cir. 1993). Where an action is brought before jurisdiction is present, the sole course for the court is to dismiss the action. *Broughton Lumber Company v. Columbia River Gorge Com'n*, 975

---

[3]     Indeed, at pages 4-5 of  the Joint Status Report of the Parties, filed December 15, 2006, (Docket # 42) plaintiffs concurred that "the non-profit is not a party in this case."

F.2d 616, 621 (9th Cir. 1992), *cert. denied,* 510 U.S. 813 (1993); *Southern Pacific Transportation Company v. City of Los Angeles*, 922 F.2d 498, 508 (9th Cir. 1990), *cert. denied,* 112 S.Ct. 382 (1991). Because the non-profit did not exist on the date of the filing of the complaint, it necessarily lacked capacity to sue and standing on that date. It's subsequent incorporation cannot confer jurisdiction on the Court.

Second, even if the non-profit entity had been in existence on the date of the filing of the complaint, plaintiff's counsel has clarified that the non-profit is not a party in this action. Joint Status Report of the Parties at 4-5 (Docket # 42). Nor could it have been. As the Court correctly pointed out at page 6 of its Order from Chambers, filed April 11, 2005, Docket 17, the non-profit entity is not the entity whose rights would be adjudicated in this case. It was the for-profit corporation incorporated in 1975 that applied for benefits under ANCSA and made land selections. The IBLA adjudicated that for-profit corporation's rights. That adjudication of the for-profit's rights is the final agency action sought to be reviewed in this case. Consequently, the non-profit would have no standing to bring this action.

## IV.  ANSWERS TO THE QUESTIONS POSED BY THE NINTH CIRCUIT

**A.  Which entity did the district court dismiss from the action below: the for-profit Minchumina Natives Incorporated or the non-profit Minchumina Natives, Inc.?  Or were both dismissed?**

The parties set forth their understanding of this issue in the parties' Joint Status Report (Docket # 42), and the Court has already issued a clarification of its intent on this issue (Docket # 43). Defendant adds only that as a technical matter, the Court did not dismiss either entity from the action below. Rather, the Court dismissed the action itself based on the lack of standing of

the plaintiff.   Defendant moved "to dismiss this action."  Motion to Dismiss, filed December 8,

2004, Docket # 8.  The Court's Order from Chambers, filed April 11, 2005, described the

defendant's motion as one "to dismiss this case," and entered judgment that "plaintiff take

nothing from defendant."  As the Court clarified in its Order from Chambers, filed December 12,

2006, Docket # 43, "the court's order had the effect of dismissing plaintiff's claims whichever

corporation its officers believe it to be."

**B.  Which of the two entities – the for-profit Minchumina Natives Incorporated or the non-profit Minchumina Natives, Inc. – was reinstated by the state in 2005?**

Defendant believes that the conclusion is inescapable that the certificate of reinstatement

issued by the State in 2005 purported to reinstate the for-profit entity.  The for-profit corporation

had been involuntarily dissolved in 1992.  The non-profit entity had never been dissolved, and

there was, therefore, no reason to "reinstate" it.  However, as already shown at 6-9 *supra*, that

purported reinstatement was unauthorized and had no legal effect.

**C.  Was the reinstatement accomplished pursuant to A.S. § 10.06.960(k)(2005) of the Alaska Corporations Code?**

There is no direct evidence of whether the certificate of reinstatement issued in 2005 was

intended to be accomplished pursuant to A.S. § 10.06.960(k) (2005).  The certificate of

reinstatement, Def. Exh. 7, is silent on the statutory authority for its issuance and the application

for reinstatement does not cite A.S. § 10.06.960(k).  The application for reinstatement did not

identify the entity as a "Native village corporation" but rather as a "Native corporation."  Def.

Exh. 6.  Defendant has found no record indicating that the state agency made a determination

regarding the applicability of A.S. § 10.06.960(k).

Nevertheless,  A.S. § 10.06.960(k) is the only section of the Alaska Corporations Code that would even arguably authorize the reinstatement of the for-profit corporation.   As explained in the Background section, *supra*., A.S. § 10.06.633(e) permits reinstatement only within two years of the 1993 dissolution, and A.S. § 10.06.633(I) permitted reinstatement of "Native corporations" only until 1995.

**D.  Was the original, for-profit organization organized as a "Native village corporation" or a "Native group corporation"?**

As shown supra at 3 and 6, the original, for-profit organization organized as a Native group corporation.

**E.  Whether an improper reinstatement affects the question of capacity.**

As shown in Part II, *supra,* where, as here, a purported reinstatement is not authorized by Alaska statute is has no legal effect and, therefore, cannot create a capacity to sue.

**F.  What is the legal effect of the reinstatement?  In other words, does the current corporate status of Lake Minchumina Natives, Inc., apply retroactively?**

Given the context in which this question appears in the Ninth Circuit's  memorandum, defendant understands this question to ask to what extent the reinstatement of the for-profit would have retroactive effect *assuming the reinstatement was proper.*  As shown above, the purported reinstatement was unauthorized and had no legal effect.

Assuming *arguendo* that the reinstatement were proper, the parties are in agreement that it has retroactive effect in the sense that the corporation and its shareholders would have "all of the rights, privileges, liabilities, and obligations that would have applied to them if the corporation had not been dissolved," and that the "corporate and shareholder actions taken during

the period of dissolution" would be "considered to be as valid as if dissolution had not occurred." A.S. § 10.06.960(k).

However, such retroactivity does not mean that this Court's dismissal should be reversed. The Court dismissed the action before the purported reinstatement of the for-profit entity.  On the basis of the record before this Court, that decision was correct.  Reversal cannot be based upon matters subsequently arising that were not before this Court prior to the dismissal.  *Fassett v. Delta Kappa Epsilon (New York),* 807 F.2d 1150, 1165 (3rd Cir. 1986), *cert. denied,* 481 U.S. 1070 (1987) (The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court.").

Instead, to the extent plaintiff wishes to raise the purported reinstatement, the proper mechanism for doing so would be a motion pursuant to Rule 60(b) Fed. R. Civ. P.   Indeed, that is the mechanism specified by the Alaska Supreme Court in a case involving reinstatement orders issued after a state court had dismissed an action for lack of corporate capacity to sue.  *Gerik-Jones, Inc. v. Timberline Industries, Inc.,* 840 P.2d 999 (Alaska 1992).

## V.  CERTIFICATION TO THE SUPREME COURT OF ALASKA IS NOT NECESSARY

Before the Ninth Circuit, defendant suggested that if the Circuit found the legal effect of plaintiffs' reinstatement under Alaska law to be ambiguous, the question should be certified to the Alaska Supreme Court pursuant to Alaska Rule of Appellate Procedure 407.  The Ninth Circuit's remand order at 8 authorizes, but does not require such certification.

Based on the analysis of this memorandum, defendant does not now believe that such certification is either necessary or appropriate.  The reinstatement authority on which plaintiff

relies is unambiguously limited to Native village corporations.  It is clear as a matter of both federal and state law that Native village corporations are different from Native group corporations.  Plaintiffs' 1975 Articles of Incorporation state that the corporation was organized the represent a Native group.  Moreover, plaintiff could not have organized as a village corporation because it has only seven members, while ANCSA requires Native village corporations to have at least 25 members.

While there are no Alaska state court decisions on the issue, federal courts have not hesitated to determine the propriety of a purported reinstatement where the state statute was clear.  *R.V. McGinniss Theatres & Pay T.V., Inc. v. Video Independent Theatres,* 386 F.2d at 594.

RESPECTFULLY SUBMITTED this 28th day of February, 2007, at Anchorage, Alaska.

<u>S/ Bruce M. Landon</u>
BRUCE M. LANDON
Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
(907) 271-5452
FAX (907) 271-5827
Email: bruce.landon@usdoj.gov
Attorney for Defendant

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this day of February 28, 2007, a copy of the foregoing BRIEF OF DEFENDANT ON CAPACITY ISSUES with Exhibits were served electronically to the following counsel of record:

    Mark Andrews

    <u>s/ Bruce M. Landon</u>
    BRUCE M. LANDON