Mark Andrews
Acting General Counsel
Tanana Chiefs Conference
122 First Avenue  Ste 600
Fairbanks AK  99701
Phone: (907) 452-8251, extension 3177
Fax: (907) 459-3953
E-mail: mark.andrews@tananachiefs.org
Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

MINCHUMINA NATIVES INC.

     Plaintiff,

  v.         Case No.  4:04-cv-00027-CV (JWS)

UNITED STATES DEPARTMENT
OF THE INTERIOR,

     Defendant
_____/

## OPENING BRIEF OF MINCHUMINA NATIVES, INC.

  Plaintiff Minchumina Natives, Inc., submits this opening brief pursuant

to the Status Report of the Parties [Document 42] and the Order from

Chambers [Document 43].

Table of Contents

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Individual questions presented

1.  Which entity did the district court dismiss from the action below:
the for-profit Minchumina Natives Incorporated or the
non-profit Minchumina Natives, Inc.?  Or were both dismissed? . . . . . . .  13

2.  Which of the two entities – the for-profit Minchumina Natives
Incorporated or the non-profit Minchumina Natives, Inc.
 – was reinstated by the state in 2005? . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

3.  Was the reinstatement accomplished pursuant to A.S. § 10.06.960(k)?. 15

4.  Was the original, for-profit organization organized as a
"Native village corporation" or a "Native group corporation"? . . . . . . . . .16

4a.  Whether an improper reinstatement affects the question of capacity. .  18

5.  What is the legal effect of the reinstatement?  In other words,
does the current corporate status of Lake Minchumina Natives, Inc.,
apply retroactively? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Appendix A: Text of Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Appendix B: List of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Table of Authorities

Cases

<u>Federal</u>
*Alaska Pacific Fisheries v. United States,* 248 U.S. 78 (1918) . . . . . . . . . . 25

*Chrysler Credit Corp. v. Superior Dodge, Inc.*, 538 F.2d 616
(4th Cir. 1976), *cert.den.*, 429 U.S. 1042 (1977) . . . . . . . . . . . . . . . . . . 30, 31

*City of Ketchikan v. Cape Fox Corp.,* 85 F.3d 1381 (9th Cir. 1996) . . . . . 25

*Defense Supplies Corporation v. Lawrence Warehouse Company*,
336 U.S. 631 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jacobus v. Alaska*, 338 F.3d 1095 (9th Cir. 2003). . . . . . . . . . . . . . . . . . 19, 20

*Leisnoi, Inc. v. United States,* 170 F.3d 1188 (9th Cir. 1999) . . . . . . . . . . . 24

*Minchumina Natives, Inc. v U.S. Department of the Interior*,
60 F.3d 1363, 1366 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Minchumina Natives, Inc. v. U.S. Department of the Interior*,
394 F.Supp.2d 1145 (D.Alaska 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759 (1985) . . . . . . . . . . . 25

*Oklahoma Natural Gas Company v. State of Oklahoma*,
273 U.S. 257 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576
(Fed.Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*The Wilderness Society v. U.S. Fish & Wildlife Service,*
353 F.3d 1051 (9th Cir. 2003), *amended on reh. en banc,*
360 F.3d 1374 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24


State
*Alaska Continental, Inc. v. Trickey*, 933 P.2d 528 (Alaska 1997) . . . . . 29, 30

*Alaska Pipeline Service Co. v. DeShong,* 77 P.3d 1227 (Alaska 2003) . . . . 24

*Devlin Construction Corp. v. Driftway South Construction Corp.,*
14 Mass.App. 954, 437 N.E.2d 1069 (1982), *app.den.,*
440 N.E.2d 1177 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Fyffe v. Wright,* 93 P.3d 444 (Alaska 2004) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Gratrix v. Pine Tree, Inc.*, 677 P.2d 1264 (1964) . . . . . . . . . . . . . . . . . . . 28

*John v. Baker*, 982 P.2d 753 (Alaska 1999) . . . . . . . . . . . . . . . . . . . . . . . . 25

*King v. Petroleum Services Corp.*, 536 P.2d 116 (Alaska 1975) . . . . . . . 27

*Norton v. Alcoholic Beverage Control Board*, 695 P.2d 1090
(Alaska 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Redwood Hotel, Inc. v. Korbien*, 197 Md. 514, 80 A.2d 28 (1951) . . . . . 31

*Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d
896 (Alaska 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Statutes

<u>Federal</u>

43 U.S.C. §1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

43 U.S.C. §1602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 16

43 U.S.C. §1607(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

43 U.S.C. §1610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

43 U.S.C. §1613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub.L. 96-487, Title XIV, § 1413, 94 Stat. 2498 (Dec. 2, 1980) . . . . . . . . . 8

Pub.L. 100-241, §3(5), 101 Stat. 1789 (February 3, 1988). . . . . . . . . . . . . 9


<u>State</u>

AS 01.10.090 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

AS 10.06.010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

AS 10.06.950 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

AS 10.06.960 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 20, 22, 23, 24, 25, 26, 34

Rules

Federal Rules of Civil Procedure 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Summary of Argument

The Plaintiff that filed its Complaint in October 2004 was the for-profit corporation, because the non-profit corporation did not exist until three months later. The parties agree that the corporation that was reinstated in 2005 was the for-profit corporation. The corporation that was formed in 1975 was a village corporation because at that time ANCSA had no category of group corporations. The corporate status did not change during the next 30 years. The parties agree that the only statutory vehicle for accomplishing reinstatement of a village corporation was Alaska Statute 10.06.960(k). The state executive agency charged with responsibility for administering the statute granted reinstatement. The terms of the statute, given their ordinary meaning, reinstate the capacity of the corporation to the time when it filed its Complaint.

Statement of Facts

Minchumina Natives Incorporated was incorporated as a for-profit corporation of the State of Alaska on November 6, 1975. [Exh 3] "The purposes for which the corporation is organized are as follows: To act as a corporation for a Native Group under the provisions of ANCSCA for the

Native Community of Lake Minchumina, as defined in Sections 3(d) [43

U.S.C.A. §1602(d)] and Section 14(h)(2) [43 U.S.C. §1613(h)(2)] of ANSCA."

[Exh 3, Art 3, sec.1]

At the time of the 1975 incorporation the Alaska Native Claims

Settlement Act contained no category of "Group Corporation".  This

designation would not appear in ANCSA until 13 years later.  In 1975,

ANCSA permitted only Regional Corporations and Village Corporations.  43

U.S.C. §1602(g)(j).  Regional Corporations were specifically named.

The term "Village Corporation" encompassed all the remaining types of

business organizations under ANCSA.  "Village Corporation" covered the

array of villages and settlements that were entitled to make land claims under

ANCSA, but which were not Regional Corporations.  The definition "Village

Corporation" had two parts.  A Village Corporation was

> any tribe, band, clan, group, village, community, or association in
> Alaska listed in sections 1610 and 1615 of this title

43 U.S.C. §1602(d).  Under this provision, Minchumina Natives Incorporated

qualified as a village corporation.  Minchumina site is listed by name in 43

U.S.C. §1610(b)(1) ("Minchumina Lake, Upper Kuskokwim").

Minchumina Natives Incorporated did not qualify under the second part of the definition.  It did not claim to qualify, nor did it need to.  The second part of the "Village Corporation" definition read as follows:

> or which meets the requirements of this chapter, and which the Secretary determines was, on the date of the 1970 census enumeration date… composed of 25 or more Natives.  43 U.S.C. §1602(d).

As a Native Group, it was a "group… listed in section[] 1610 of this title," 43 U.S.C. §1602(d).  Minchumina Natives Incorporated became one of the several entities which could organize under the category of village corporations.

In later years, Minchumina Natives Incorporated filed biennial reports identifying itself as an "Alaska Native Group Corporation" or similar phrases. [Exh 5 (1977), Exh 7 (1979), Exh. 9 (1980)].

In 1980, Congress made reference to Native group corporations for the first time.  However, Congress did not add a new category of "group corporation" to ANCSA.  Congress authorized the Secretary of the Interior to make grants to Native Group Corporations for planning and development purposes.  Pub.L. 96-487, Title XIV, § 1413, Dec. 2, 1980, 94 Stat. 2498.

In 1988, Congress amended the Act to include a new definition, "Group Corporation". 43 U.S.C. §1602(n), added by Pub.L. 100-241, §3(5), 101 Stat. 1789. This amendment marked the first time that this definition appeared in ANCSA. The amendment did not purport to alter the corporate status of any existing Native corporation. Congress made applicable to the Native Group Corporations certain new sections relating to stock issuance, inheritance, and audits. 43 U.S.C. §1607(c). Existing corporations were not statutorily reorganized from village corporations to the new category of group corporatisons. The Plaintiff corporation did not change its status with the State of Alaska as a result of the 1988 amendments, and no public records that show that the State asked the Corporation to do so.

In 1991 the corporation received a notice of involuntary dissolution, but was reinstated. [Exh. 9, 10, 11]  In 1993, the Corporation received another notice of involuntary dissolution.  [Exh 12].  This time, the Corporation was dissolved, on September 20, 1993. [Exh 13]

For the next eleven years, this litigation continued without regard for the dissolution.  The case came before this District Court and then to the Court of

Appeals. *Minchumina Natives, Inc. v. U.S. Department of the Interior*, 60 F.3d 1363, 1365-66 (9th Cir. 1995). On remand from the Ninth Circuit, the Interior Board of Land Appeals continued to process the claim. *Minchumina Natives, Inc.,* 153 IBLA 225 (August 31, 2000).

The Interior Board of Land Appeals upheld its earlier decision on September 7, 2004, on grounds unrelated to the corporate dissolution. The for-profit Corporation filed in District Court on October 6, 2004. [Document 1]

In response, the Department moved to dismiss based on a lack of capacity, and included as an exhibit the 1993 Certificate of Involuntary Dissolution. As shown by the dissolution Certificate, the corporation was named Minchumina Natives Incorporated and had Alaska entity number 15009D. [Exh 13] Thus, the entity that the Department challenged was the 1975 for-profit corporation. That corporation was the Plaintiff when the Complaint was filed.

During the proceedings regarding the Department's motion to dismiss, the directors organized a new nonprofit corporation under the name Minchumina Natives, Inc. [Exh 21, 22]. The incorporation date was January

17, 2005.  The nonprofit corporation submitted its papers to the court as part of the motion practice in response to the Department's motion to dismiss.

The District Court issued its decision on April 11, 2005.  *Minchumina Natives, Inc., v. U.S. Department of the Interior*, 394 F.Supp.2d 1145 (D.Alaska 2005).

The Judgment in a Civil Case issued on April 13.  [Document 18]  In response to a motion from the Corporation, the District Court extended the time to appeal to July 12.  The notice of appeal was filed July 8, 2005.  [Exh 25]

One week later, on July 15, the pertinent amendment to Alaska corporation law became effective.  AS 10.06.960(k)(effective date indicated in Note to statute).  The 2005 amendment allowed village corporations which were organized under the Alaska Native Claims Settlement Act, and which had been involuntarily dissolved, to file for reinstatement until December 31, 2006.  AS 10.06.960(k).  Upon reinstatement, "all corporate and shareholder actions taken during the period of dissolution are considered to be as valid as if dissolution had not occurred."  *Id.*

The for-profit corporation applied for reinstatement under the name Lake Minchumina Natives, Inc.[1]  [Exh. 16] The State of Alaska granted reinstatement on November 21, 2005.  [Exh 18]  The State granted the name change the same day.  [Exh 17]

The Alaska Entity Number of the reinstated corporation is identical to that of the Corporation that was incorporated in 1975: #15009 D.  [Compare Exhs 17, 18 with Exhs 1, 2, 8, 9, 10, 11, 12, 13]  The Division of Corporations, Business and Professional Licensing accepted the late biennial reports filed under Alaska entity number 15009D.  [Exhs. 14, 15]  The corporation changed its registered agent under that Alaska entity number.  [Exh 19]  Alaska public records show the corporation as "Active—Good Standing.'  [Exh 1]  The "entity effective date" is November 6, 1975 [Exh 1], the same date as shown on the 1975 Certificate of Incorporation.  [Exh 3]

On appeal, Plaintiff moved to supplement the record with the reinstatement materials.  The Court of Appeals declined to supplement the record, but took judicial notice of the documents.  Plaintiff argued that it now

---

[1]  The former name, Minchumina Natives, Inc., had by this time been taken by the 2005 nonprofit.

had the capacity to sue, retroactive to 2004.  U.S. Court of Appeals,

Memorandum, August 29, 2006, at 2.  The Court of Appeals found the record

before it "incomplete in several respects" and remanded to this Court to

"determine the capacity question in light of the purported reinstatement."  *Id.*

This brief reviews the five questions asked by the appellate court.

## 1.  Which entity did the district court dismiss from the action below: the for-profit Minchumina Natives Incorporated or the non-profit Minchumina Natives, Inc.?  Or were both dismissed?

The original plaintiff was the for-profit corporation.  Plaintiff submits

that the District Court erred in its Order from Chambers [Document 43], dated

December 19, 2006.  The District Court held: "the court concluded that the for-

profit corporation had ceased to exist and that plaintiff was a non-profit

corporation which could not pursue an application made by the for-profit

corporation."

The entity dismissed from the case is the entity that brought the claim to

court.  That entity was the one that had litigated the claim for 29 years.  The

non-profit corporation did not exist until three months after the Complaint was

filed.

Whatever ambiguity the record might contain on this issue, the fact of the matter is that the for-profit corporation brought the claim to court.

The non-profit corporation described itself as the re-incorporation of the for-profit Minchumina Natives, Inc., "that has pursued land claims s a Native group under the Alaska Native Claims Settlement Act." [Exh 22] This designation was mooted by events. Later the same year the Alaska State Legislature changed state corporations law to allow reinstatement of the original for-profit corporation. Whatever effect the attempt to re-incorporate might have had, it is now unnecessary, given the change in the law and the reinstatement issued by the Alaska division of corporations.

In their Joint Status Report, the parties agreed that the District Court should order that the non-profit is not a party to this case. [Document 42 at 4-5]. The Order from Chambers [Document 43] did not affect this agreement.

The parties agree that the name of the for-profit corporation has been properly changed to Lake Minchumina Natives, Inc. [Document 42 at 4]

**2.  Which of the two entities – the for-profit Minchumina Natives Incorporated or the non-profit Minchumina Natives, Inc. – was reinstated by the state in 2005?**

The parties agree that the certificate of reinstatement issued by the State in 2005 refers to the for profit entity.  [Document 42 at 5]

**3.  Was the reinstatement accomplished pursuant to A.S. § 10.06.960(k)?**

At Document 42, page 5, the parties agreed:

a.  that the certificate of reinstatement is silent on the statutory authority for its issuance;

b.  that the application for reinstatement does not cite AS 10.06.960(k);

c.  that there is no record indicating the state made a determination regarding the applicability of AS § 10.06.960(k);

d.  that Section 10.06.960(k) is the only section of the Alaska Corporations Code that would authorize the reinstatement of the for-profit corporation.  No other section of the Alaska Statutes would permit this result.

**4.  Was the original, for-profit organization organized as a "Native village corporation" or a "Native group corporation"?**

The Department maintains that the for-profit organization organized as a "Native group corporation."  Plaintiff maintains that the for-profit organization organized as a "Native village corporation."  The significance of this issue is that the new amendment, AS 10.06.960(k), authorizes reinstatement of "a Native village corporation under act," referring to ANSCA.  [Document 42 at 6].

The Corporation's argument essentially appears in the Statement of Facts.  There was no such thing as a group corporation when the Plaintiff incorporated in 1975.  It is legally impossible for Minchumina Natives Incorporated to have been a group corporation in 1975.  Besides Regional Corporations, the only entities that ANCSA created were Village Corporations.

ANCSA defined the term "Native group," meaning a tribe, band, clan, village, or community of less than 25 Alaska Natives, who compose a majority within the community.  42 U.S.C. §1602(d).  However, in 1975 ANCSA did not create a corresponding category of "group corporation".  If a group had any

corporate status at all, it had to be as a Native village corporation.  And that is the type of corporation that qualified for reinstatement under the 2005 Alaska state amendments to its corporations code.

The Corporation's biennial reports in 1977, 1979, and 1980 referred to it as a Native Group Corporation.  [Exhs 5, 7, 9]  If the organizers qualified for a land claim under ANCSA, it would be as a Native group. 43 U.S.C. §1613(h). That would be the group's status for purposes of determining the size and limit of its land claims.  However, in relation to corporations law, the only status that Minchumina Natives Incorporated could have was as a village corporation.  No other vehicle was available to the organizers in 1975.

When Congress added group corporations to ANCSA in 1988, there is no suggestion that the amendment changed the status of Minchumina Natives Incorporated.  There is no suggestion that the ANCSA village corporations were obligated to reorganize themselves to make such a change.  Congress did alter land claims under 43 U.S.C. §1613(h)(2)(relating to Native Groups). There is no suggestion that the Department of the Interior advised Minchumina Natives Incorporated that they were required to reorganize under the 1988

amendments.  This new category of Group Corporations is supposed to be important enough that it would cause such a corporation to forfeit its capacity to sue under Alaska law.  Yet in the eighteen years since 1988, the Department has never seen it necessary to ask or to require Minchumina Natives Incorporated to change its status.

When the State of Alaska reinstated Minchumina Natives, Inc. in 2005 under its new name, the corporation had the identical number to the entity that was incorporated in 1975.  And that 1975 entity was, as a matter of law, a village corporation.

**4a.  Whether an improper reinstatement affects the question of capacity.**

The Alaska Division of Corporations, Business and Professional Licensing made a reasonable decision to reinstate Plaintiff, and there is no substantial reason to disturb that decision.  The term "Native village corporation" is statutory language for which the division has responsibility.  The decision of an executive department of the State is entitled to deference, as this department is charged with the interpretation and application of its statute.

The Commissioner of Commerce, Community, and Economic Development has the statutory authority to administer the Alaska Corporations Code, chapter AS 10.06.  AS 10.06.950.

The rule in the Ninth Circuit is that the reviewing court will defer to the agency's interpretation of its own statute, so long as that interpretation is reasonable. This rule extends to the actions of Alaska state executive agencies. *Jacobus v. Alaska*, 338 F.3d 1095 (9th Cir. 2003).  In *Jacobus*, the Ninth Circuit deferred to a state agency interpretation of a disputed state campaign finance law.  The interpretation was issued by the Alaska Public Offices Commission and was not unreasonable.  338 F.3d at 1106, ns. 16; 17.

The specific question in *Jacobus* was whether the Ninth Circuit could predict how the state's highest court would decide the issue.  Assuming that the Ninth Circuit could do so, it would follow that interpretation.  In the case now before the District Court, the state agency charged with interpretation of the Alaska Corporations Code has reinstated the corporation.  The parties have agreed that under Alaska law, the only vehicle that would allow reinstatement is Alaska Statutes 10.06960(k).

*Jacobus* followed Alaska state precedent.

In Alaska, "if the questions at issue implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function," then the courts defer to the agency's interpretation of a statute, "so long as it is reasonable."

*Jacobus,* 338 F.3d at 1106, n. 17, *quoting Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987).

This record shows no reason to conclude that the Division of Corporations, Business and Professional Licensing acted unreasonably.

**5.  What is the legal effect of the reinstatement?  In other words, does the current corporate status of Lake Minchumina Natives, Inc., apply retroactively?**

The parties agree that if the reinstatement was proper, it has retroactive effect in the sense that the corporation and its shareholders would have "all of the rights, privileges, liabilities, and obligations that would have applied to them if the corporation had not been dissolved," and that the "corporate and shareholder actions taken during the period of dissolution" would be "considered to be as valid as if dissolution had not occurred." AS 10.06.960(k).

However, the parties disagree whether such retroactivity means that this Court's dismissal should be reversed.  [Document 42 at 6-7]

Minchumina Natives, Inc., has been reinstated under the laws of the State of Alaska, and this reinstatement retroactively restored the appellant's capacity to sue.  Alaska follows the familiar rule that a corporation is a creature of state law, and Alaska case law liberally applies that rule.  The case law from other states shows that courts routinely permit litigation by reinstated corporations when the plaintiff lacked capacity to sue on the date of the Complaint.  Reviewing courts have permitted litigation to go forward even when the lack of capacity is discovered for the first time on appeal.

For this part of its argument, Plaintiff offers its argument from its briefs before the Ninth Circuit.

## A.

Federal Rule of Civil Procedure 17(b) provides: "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."  The rule codifies the well-established principle that a corporation's capacity to sue is a question of substantive law.  The United

States Supreme Court follows the familiar rule that the corporation is creature of statute.  The corporation has capacity to act when the statutes so provide, and lack that capacity when they do not.  *Defense Supplies Corporation v. Lawrence Warehouse Company*, 336 U.S. 631 (1949).  There, the court held, in pertinent part,

> …a time-honored feature of the corporate device is that a corporate entity may be utterly dead for most purposes, yet have enough life remaining to litigate its actions.  All that is necessary is a statute so providing.  Unless the statutory terms are observed, however, the consequences of total dissolution attach, and … the actions abate.

336 U.S. at 634-35 (cites omitted).  The Supreme Court applied a similar rule in *Oklahoma Natural Gas Company v. State of Oklahoma*, 273 U.S. 257, 259 (1927)(discussing whether a dissolved corporation could litigate through a reorganized entity).  Thus, the question here is whether Plaintiff has observed the statutory terms.

The relevant part of Alaska corporation law is AS 10.06.960(k).  As pertinent here, this subsection reads:

> (k) Notwithstanding (i) of this section and AS 10.06.633(e), a corporation that is organized as a Native village corporation under the

act, that has been involuntarily dissolved by the commissioner under AS 10.06.633, and that has failed to apply for reinstatement during the period established under AS 10.06.633(e) may be reinstated under AS 10.06.633(e) on or before December 31, 2006. The reinstated corporation and its shareholders have all of the rights, privileges, liabilities, and obligations that would have applied to them if the corporation had not been dissolved, and all corporate and shareholder actions taken during the period of dissolution are considered to be as valid as if dissolution had not occurred.

At the time of dismissal order in April 2005, the Alaska reinstatement statute that pertained to ANCSA corporations permitted reinstatement only to 2003. AS 10.06.960(i).

One of the general powers of an Alaska corporation is to "sue and be sued." AS 10.06.010(2). There is no reason to conclude that the Alaska State Legislature excluded this particular corporate power when it otherwise restored all other corporate and shareholder powers. Applying the plain language of the statute, which contained no exceptions to restored corporate power, the capacity to sue under AS 10.06.010(2) was similarly restored.

The Corporation was reinstated in November 2005, and so regained all of the rights and privileges that it would have had if the corporation had not been dissolved. Because of its reinstatement, Minchumina Natives, Inc., held the capacity to sue during the period of its involuntary dissolution from September 1993 to the present.

The retroactive validation of corporate status, powers, and actions accomplishes the plain meaning of AS 10.06.960(k). In Alaska law, statutes will be interpreted according to "reason, practicality, and common sense, normally giving unambiguous language its plain meaning." *Fyffe v. Wright* 93 P.3d 444, 457, n. 39 (Alaska 2004). State law looks to the language, purpose, and legislative history, and so attempts to give effect to legislative intent. *Alaska Pipeline Service Co. v. DeShong,* 77 P.3d 1227, 1234 (Alaska 2003). The federal rules are substantially identical. Statutes are interpreted in accordance with their intended purpose. *Leisnoi, Inc. v. United States,* 170 F.3d 1188, 1193 (9th Cir. 1999). Statutes are given their ordinary, contemporary, and common meaning. *The Wilderness Society v. U.S. Fish & Wildlife Service,* 353 F.3d 1051, 1060 (9th Cir. 2003), *amended on reh. en*

*banc*, 360 F.3d 1374 (2004). The federal rule looks to the plain meaning of the statute. *City of Ketchikan v. Cape Fox Corp.*, 85 F.3d 1381, 1385 (9th Cir. 1996)(construing ANCSCA). Here, the state and federal rules produce the same result. The ordinary meaning of the words is that the reinstated corporation had the capacity to sue during proceeding prior to the date of reinstatement.

Alaska has codified its policy that statutes are not retroactive "unless expressly declared therein." AS 01.01.090. Here, the legislative declaration is written in plain language: upon reinstatement, the powers and privileges of the corporation are validated as though dissolution had never occurred. AS 10.06.960(k).

Overarching all of these rules of interpretation is the rule that statutes passed for the benefit of Indians will be construed in favor of Indians. *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759 (1985); *Alaska Pacific Fisheries v. United States,* 248 U.S. 78, 89 (1918); *City of Ketchikan, supra,* 85 F.3d at 1385. Alaska follows this rule when interpreting federal statutes. *John v. Baker*, 982 P.2d 753, 752 (Alaska 1999).

Alaska corporation law was not passed for the benefit of Indians. However, AS 10.06.960 itself deals exclusively with corporations organized under ANCSA, and deals with no other subject. Without question ANCSA was passed for the benefit of Indians. 43 U.S.C. §1601(a),(b)(Congressional findings and declaration of policy). The familiar rule of interpretation relating to such statutes is applicable to this particular provision of Alaska law.

The meaning of AS 10.06.960(k) is that the capacity and actions of ANCSA corporations are restored retroactively upon reinstatement.

### B.

Given the language of AS 10.06.960(k), and the rules of statutory interpretation that apply, state court decisions favor retroactive application.

The Alaska Supreme Court has adopted a definition of retroactivity. *Norton v. Alcoholic Beverage Control Board*, 695 P.2d 1090 (Alaska 1985).

> A retroactive [retrospective] statute is one which gives to pre-enactment conduct a different legal effect from that which it would have had without the passage of the statute.

695 P.2d at 1093 (cite omitted, brackets in original).

Several decisions show that the Alaska Supreme Court has interpreted statutes liberally in favor of reinstatement.  A dissolved corporation may maintain suit in court upon payment of applicable taxes and fees.  *See King v. Petroleum Services Corp.* 536 P.2d 116 (Alaska 1975)(per curiam).  On appeal, the *King* appellee raised for the first time the issue of corporate capacity.  The *King* opinion held that the appellee had waived the issue, but its dicta is instructive here.

> As we held in Brown v. Music, Inc., 359 P.2d 295 (Alaska 1961), failure to raise the issue of capacity to sue results in a waiver of the defense. This conclusion is buttressed by the holding in Richardson Vista Corp. v. City of Anchorage, 14 Alaska 1 (D.Alaska 1952), that compliance with the Corporation Act even after a suit has been filed is sufficient to allow a corporation to maintain an action and to prevent dismissal based on the previous default.  Although Petroleum Services did not in fact comply with the requirements of AS 10.05.720 before the commencement of the suit, the corporation did pay the required tax and file its annual report before trial.

536 P.2d at 118 (footnotes omitted).

Alaska law permits a corporation to cure a failure to comply with statutory requirements so long as it does so before the statute of limitations on

the underlying claim has not expired. *Gratrix v. Pine Tree, Inc.*, 677 P.2d 1264 (1964)(per curiam). In *Gratrix*, the plaintiff corporation initially failed to comply with state law permitting a foreign corporation to file in Alaska courts. However, it complied later, and amended its pleadings to reflect this development.

The Alaska Supreme Court held that State law can validate corporate acts retroactively. The court relied on *King, supra,* 536 P.2d 116.

> In light of these precedents, we read both AS 10.05.690 and AS 10.05.720 as permitting a corporation to cure its failure to comply with the statutory requirements, so long as it does so before the statute of limitations on the underlying action expires. There is no policy purpose, and no sound legal reason, for denying access to the courts where compliance occurs after suit is filed but before the statute of limitations has run, since AS 10.05.693 expressly validates corporate acts and contracts undertaken without a certificate.

677 P.2d at 1267 (cite omitted).

Under Alaska case law, the claims of even dissolved corporations may be prosecuted. A corporation that had been involuntarily dissolved in 1983 was allowed to prosecute claims in 1989 when the officers and shareholders

reorganized the company and the claims arose under contracts formed prior to dissolution. *Alaska Continental, Inc. v. Trickey*, 933 P.2d 528 (Alaska 1997). The court held:

> In *Gamalski Hardware, Inc. v. Baird Co.*, 298 Mich. 662, 299 N.W. 757 (1941), the defendant opposed a plaintiff corporation's action for replevin on the ground that it lacked standing after its corporate charter had been voided by the state for failure to pay franchise fees…
>
> Because [Alaska plaintiff] did not reincorporate with the two years permitted by former AS 10.05.519(d), it cannot press its claims as the same entity that existed previously.  However, that the time allowed for reinstatement has expired does not imply that a legal transfer of right to a separate entity is precluded.  Such a construction would allow contracting partners to breach their agreements and take advantage of a lapsed firm.  Legal rights cannot be allowed to fade into the mist simply because a corporation has lost its charter.  We therefore adhere to the reasoning of *Gamalski*.  When a corporate franchise has been voided and conditions for its reanimation cannot be satisfied, all rights of action accruing to the former entity are impliedly assigned by operation of law to the shareholders or any new corporation which they or their successors in interest have formed.

933 P.2d at 533, n. 2 (part).

Thus, in *Alaska Contintental* the court permitted prosecution of an old claim by a new corporation organized by the principals of the dissolved corporation. In the case of Minchumina Natives, Inc., the same corporation is continuing to prosecute the same claim.

## C.

Decisions under other similar state laws have been held to have retroactive effect. *Chrysler Credit Corp. v. Superior Dodge, Inc.*, 538 F.2d 616 (4th Cir. 1976), *cert.den.,* 429 US 1042 (1977). In *Chrysler Credit Corp.*, the defendant received a judgment notwithstanding the verdict based on the plaintiff's lack of corporate capacity during the litigation. The plaintiff was involuntarily dissolved some time before the case went to trial. The plaintiff corporation paid its taxes and was reinstated after the jury verdict in its favor and while defendant's motion for a judgment notwithstanding the verdict was pending. 538 F.2d at 617. Maryland law at the time provided that reinstatement will

> validate all contracts, acts, matters and things made, done and performed within the scope of its charter by the corporation, its officers and agents during the time when the charter was void, with the same force and

effect and to all intents and purposes as if the charter had at all times remained in full force and effect.

638 F.2d at 618.  The district court held that the corporation did not produce evidence of its capacity during the trial, and granted the motion for judgment notwithstanding the verdict.

The federal appeals court reversed.  The Court of Appeals for the Fourth Circuit applied Maryland decisions which held that the state statute reinstates corporate capacity even after a case is dismissed and is on appeal. 538 F.2d at 618, *citing Redwood Hotel, Inc. v. Korbien*, 197 Md. 514, 80 A.2d 28 (1951).

*Redwood Hotel* is especially instructive here, because reinstatement occurred only after a trial court judgment and during an appeal.  In *Redwood Hotel*, the corporation filed its suit in court but later forfeited its charter.  80 A.2d at 29.  The case was dismissed for reasons other than lack of capacity. The corporation was reinstated during the appeal.  *Compare chronology* at 80 A.2d at 29, 32.  The prevailing party in trial court argued that the lack of capacity continued.  The Maryland Court of Appeals concluded that the statute reinstated corporate power retroactively, and the suit could be maintained.  80 A.2d at 32.

The Court of Appeals for the First Circuit has relied upon Massachusetts law to permit corporations to maintain actions despite a lapse in corporate status. *Stock Pot Restaurant, Inc. v. Stockpot, Inc.* 737 F.2d 1576 (Fed.Cir. 1984). In *Stock Pot Restaurant*, one of the litigants was dissolved for a three-year period, then was reinstated. The federal Court of Appeals looked to Massachusetts state law to conclude that the reinstatement operated retroactively to allow the corporation to prosecute a trademark dispute. 737 F.2d at 1580.

*Stock Pot Restaurant* relied upon *Devlin Construction Corp. v. Driftway South Construction Corp.*, 14 Mass.App. 954, 437 N.E.2d 1069 (1982), *app.den.*, 440 N.E.2d 1177 (1984). In *Devlin Construction*, the corporation began an arbitration action after its dissolution and after the end of the three-year winding-up period allowed under state law. The losing party at arbitration filed in state court to vacate the arbitration award based on the lack of capacity. 437 N.E.2d at 1070. During the court proceedings, the dissolved corporation, which had prevailed, obtained reinstatement. The trial court granted the motion to vacate the award.

The Appeals Court of Massachusetts reversed. The court cited the statute:

> In pertinent part, it provides that once a revival certificate is filed by the State Secretary, the corporation "shall stand revived with the same powers, duties and obligations as if it had not been dissolved ... and all acts and proceedings of its officers, directors and stockholders, acting or purporting to act as such, which would have been legal and valid but for such dissolution, shall ... stand ratified and confirmed."

437 N.E.2d at 1070. The appeals court cited the fact that the reinstatement occurred before the trial court judgment. However, reinstatement was found to relate back at least to the end of the three-year period for winding up, *id*., so even the arbitration proceedings were covered.

The case law which has interpreted Alaska corporation law, and similar statutes in other jurisdictions, has applied the plain language of the statute to retroactively restore and validate corporate powers and actions. The capacity and actions of Minchumina Natives, Inc., were similarly validated upon its reinstatement as an Alaska corporation.

Conclusion

Plaintiff Lake Minchumina Natives, Inc., asks that the District Court find that the reinstatement certificate issued by the Alaska Division of Corporations, Business, and Professional Licensing retroactively restored the Plaintiff's capacity to sue and be sued under Alaska Statutes 10.06.960(k).

Respectfully submitted this 28th day of February, 2007

/s/ Mark Andrews
Tanana Chiefs Conference

Certificate of Service.
I certify that on this 28th day of February, 2007, a copy of the foregoing was served by ECF transfer to Bruce Landon, Esq.   /s/ Mark Andrews

Addendum
Text of Statutes

<u>Federal</u>

43 U.S.C. §1601

Congress finds and declares that—

(a) there is an immediate need for a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims;

(b) the settlement should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation, with maximum participation by Natives in decision affecting their rights and property, without establishing any permanent racially defined institutions, rights, privileges, or obligations, without creating a reservation system or lengthy wardship or trusteeship, and without adding to the categories of property and institutions enjoying special tax privileges or to the legislation establishing special relationships between the United States Government and the State of Alaska;

…

43 U.S.C. §1602

For purposes of this chapter, the term—

….

(c) "Native village" means any tribe, band, clan, group, village, community or association in Alaska listed in sections 1610 and 1615 of this title, or which meets the requirements of this chapter, and which the secretary determines was, on the date of the 1970 census enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance), composed of twenty-five or more Natives;

(d) "Native group" means any tribe, band, clan, group, village, community, or village association of Natives in Alaska composed of less

than twenty-five Natives, which comprise a majority of the residents of the locality;

....

(j) "Village Corporation" means an Alaska Native Corporation organized under the laws of the State of Alaska as a business for profit or nonprofit corporation to hold, invest, manage and/or distribute lands, property, funds, and other rights and assets for an on behalf of a Native village in accordance with the terms of this chapter. [fn indicates this subsection should probably end in a semicolon)

…

(m) "Native Corporation" means any Regional Corporation, any Village Corporation, any Urban Corporation, and any Native Group. [statute as it read to 1988.  Pub.L. 100-241, §3(4) substituted "Group Corporation" for the former "Native Group." New section is immediately below.].

(m) "Native Corporation" means any Regional Corporation, any Village Corporation, and Urban Corporation, and any Group Corporation; [subsection as it read after 1988 amendments]

(n) "Group Corporation" means any Alaska Native Group Corporation organized under the laws of the State of Alaska as a business for profit or nonprofit corporation to hold, invest, manage and/or distribute lands , property, funds, and other rights and assets for and on behalf of members of a Native group in accordance with the terms of this chapter;

43 U.S.C. §1610
(b) List of Native villages subject to chapter; review; eligibility for benefits; expiration of withdrawals for villages; alternative eligibility; eligibility of unlisted villages
    (1) The Native villages subject to this chapter are as follows:
NAME OF PLACE AND REGION

....

Minchumina Lake, Upper Kuskokwim.

....

43 U.S.C. §1613

(h) The secretary is authorized to withdraw and convey 2 million acres of unreserved and unappropriated public lands located outside the areas withdrawn by sections 1610 and 1615 of this title [Title 43] and[1] follows:

...

(2) The secretary may withdraw and convey to a Native group that does not qualify as a Native village, if it incorporates under the laws of Alaska, title to the surface estate in not more than 23,040 acres surrounding the Native group's locality. The subsurface estate in such land shall be conveyed to the appropriate Regional Corporation unless the lands are located in a Wildlife Refuge.

[1]The United States Code Annotated adds a note that "and" should probably be "as".

43 U.S.C. §1607(c)

(c) Applicability of section 1606.

The provisions of subsections (g), (h) (other than paragraph (4)), and (o) of section 1606 of this title shall apply in all respects to Village Corporations, Urban Corporations, and Group Corporations.

Pub.L. 96-487, Title XIV, § 1413, Dec. 2, 1980, 94 Stat. 2498

The Secretary shall pay by grant to each of the Native Group Corporations established pursuant to section 14(h)(2) of the Alaska Native Claims Settlement Act [section 1613(h)(2) of this title] and finally certified as a Native Group, an amount not more than $100,000 or less than $50,000 adjusted according to population of each Group. Funds authorized under this section may be used only for planning, development, and other purposes for which the Native Group Corporations are organized under the Settlement Act [this chapter].

State

Alaska Statutes 01.10.090
No statute is retrospective unless expressly declared therein.

Alaska Statutes 10.06.010
Subject to the limitations in its articles of incorporation, the provisions of this chapter and other applicable law, a corporation has all the powers of a natural person in carrying out its business activities, including, without limitation, the power to
> ….
> (2) sue and be sued in its corporate name
> ….


Alaska Statutes 10.06.950
Powers of commissioner.
The commissioner has the power and authority reasonably necessary to enable the commissioner to administer this chapter and to perform the duties imposed upon the commissioner by this chapter.

Alaska Statutes 10.06.960.
Corporations organized under Alaska Native Claims Settlement Act.

(f) Notwithstanding the other provisions of this chapter, a corporation organized under the Act is governed by the Act to the extent the Act is inconsistent with this chapter, and the corporation may take any action, including amendment of its articles, authorized by the Act, and the action is considered approved and adopted if approved under the Act. [second sentence omitted.]

(i) Notwithstanding AS 10.06.633(e), a corporation that is organized as a Native corporation under the act, that has been involuntarily dissolved by the commissioner under AS 10.06.633, and that has failed to apply for

reinstatement during the period established under AS 10.06.633(e), may be reinstated under AS 10.06.633(e) within one year of June 29, 1994. The reinstated corporation and its shareholders have all of the rights, privileges, liabilities, and obligations that would have applied to them if the corporation had not been dissolved, and all corporate and shareholder actions taken during the period of dissolution are considered to be as valid as if dissolution had not occurred.

....

(k) Notwithstanding (i) of this section and AS 10.06.633 (e), a corporation that is organized as a Native village corporation under the act, that has been involuntarily dissolved by the commissioner under AS 10.06.633, and that has failed to apply for reinstatement during the period established under AS 10.06.633 (e) may be reinstated under AS 10.06.633(e) on or before December 31, 2006. The reinstated corporation and its shareholders have all of the rights, privileges, liabilities, and obligations that would have applied to them if the corporation had not been dissolved, and all corporate and shareholder actions taken during the period of dissolution are considered to be as valid as if dissolution had not occurred. If a corporation elects to reinstate under this subsection and if the corporation's previously used corporate name is no longer available for use by the corporation, then, notwithstanding AS 10.06.502 - 10.06.510, an amendment to the articles of incorporation changing the previously used corporate name may be adopted by action of the corporation's board of directors alone.

**Effect of amendments**:  The first 2005 amendment, effective June 25, 2005, updated a federal reference in subsections (a) and (n)—(p) and substituted "Act" for "act" throughout the section.

The second 2005 amendment, effective July 15, 2005, substituted "December 31, 2006" for "December 31, 2003" in the first sentence in subsection (k).

List of Exhibits

The Joint Status Report [Document 42 at 3, n. 1] notes that the corporate filings and certificates and certificates relating to the for-profit corporation from 1975 to the present are available on the Internet.  These papers and those for the nonprofit corporation may be judicially noticed.  Federal Rules of Evidence 201(b).

With two exceptions, all exhibits are from the internet web site for the Alaska Department of Commerce, Division of Corporations, Business, and Professional Licensing.

The two exceptions are exhibits 17 and 18, relating to the name change and reinstatement of the for-profit corporation.  These were submitted to the Court of Appeals and noticed by the court.

1.  Summary information, Lake Minchumina Natives, Inc., #15009D

2. List of documents filed for Lake Minchumina Natives., Inc.

3. Creation filing, November 6, 1975.

4. Biennial report, September 8, 1976.

5. Biennial report, November 21, 1977.

6. Biennial report, February 1, 1978.  Blank page.

7.  Biennial report, February 5, 1979.

8. Biennial report, June 26, 1980.

9. Dissolution 60-day notice.  August 5, 1991.

10. Administrative Dissolution, October 14, 1991.

11. Certificate of Reinstatement, November 27, 1991.

12. Dissolution 60-day notice, July 12, 1993.

13.  Certificate of Dissolution, September 20, 1993.

14.  Biennial report, years 1993, 1995, 1997, 1999, 2001, 2003.  Alaska

corporate entity number 15009D.  The identical document appears on the

internet a separate time for each of these years.

15. Biennial report, year 2005.  Alaska corporate entity number 15009D

16. Name change amendment.  From Minchumina Natives, Inc., to Lake

Minchumina Natives, Inc.  Alaska entity number 15009-D

17.  Certificate of Name change.  November 21, 2005.

18.  Certificate of Reinstatement, November 21, 2005. Alaska Entity #15009D.

19.  Registered agent change.  November 21, 2005.  This is the final exhibit

relating to the for-profit corporation.

20. Summary Information, Minchumina Natives, Inc. Alaska Entity Number 91983.  This is first exhibit relating to the nonprofit corporation, incorporated January 27, 2005.

21. List of documents filed for Minchumina Natives, Inc.

22. Articles of incorporation, Minchumina Natives, Inc., January 27, 2005.