BRUCE M. LANDON
Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone: (907) 271-5452
Facsimile: (907) 271-5827
Email: bruce.landon@usdoj.gov

Attorney for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MINCHUMINA NATIVES INC.  ) | |
| ) | |
| Plaintiff,  ) | Case No. 4:04-cv-0027-CV (JWS) |
| ) | |
| v.  ) | |
| ) | |
| UNITED STATES DEPARTMENT OF  ) | |
| THE INTERIOR,  ) | |
| ) | |
| Defendant.  ) | |

RESPONSE BRIEF OF DEFENDANT ON CAPACITY ISSUES

MNI v. DOI, 4:04-cv-0027-CV (JWS)
US Resp. On Capacity

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  PLAINTIFF COULD NOT BE REINSTATED BECAUSE IT HAD NOT BEEN ORGANIZED AS A NATIVE VILLAGE CORPORATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. THE CLEAR LANGUAGE OF THE STATUTE CANNOT BE OVERRIDDEN BY THE PURPORTED REINSTATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. PLAINTIFF'S CLAIMS CANNOT BE PROSECUTED UNLESS PLAINTIFF HAS BEEN VALIDLY REINSTATED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. PLAINTIFF'S RELIANCE ON THE CANON OF CONSTRUCTION IN FAVOR OF NATIVES TO ESTABLISH THE RETROACTIVE EFFECT OF AS § 10.06.960(K) IS ERRONEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TABLE OF AUTHORITIES

FEDERAL CASES

Alaska Public Easement Defense Fund v. Andrus, 435 F.Supp. 664 (D. Alaska 1977) . . . . . . . 12

Aleknagik Natives Ltd. v. United States, 806 F.2d 924 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . 7, 12

Amoco Production Company v. Village of Gambell, 480 U.S. 531 (1987) . . . . . . . . . . . . . . . . . 8

Bay View, Inc. v. United States, 278 F.3d 1259 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 11

Chugach Alaska Corp. v. Lujan, 915 F.2d 454 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 7, 12

Community Electric Service of Los Angeles, Inc. v. National Electrical Contractors Ass'n, Inc., 869 F.2d 1235 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Haynes v. United States, 891 F.2d 235 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

Jacobus v. Alaska, 338 F.3d 1095 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Kenaitze Indian Tribe v. State of Alaska, 860 F.2d 312 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . 9

R.V. McGinnis Theatres & Pay T.V. Inc. v. Video Independent Theatres, Inc., 386 F.2d 592 (10th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Seldovia Native Ass'n, Inc. v. Lujan, 904 F.2d 1335 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . 7, 12

Tyonek Native Corp. v. Secretary of the Interior, 836 F.2d 1237 (9th Cir. 1988) . . . . . . . . . . . 12

United States v. Atlantic Richfield Co., 612 F.2d 1132 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . 12

STATE CASES

Alaska Continental, Inc. v. Trickey, 933 P.2d 528 (Alaska 1997) . . . . . . . . . . . . . . . . . . . . 10, 11

Beavers v. Recreation Association of Lake Shore Estates, Inc., 130 S.W.3d 702 (Mo. App. S.D. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Delinquent Property Taxes Owed to City of Nome, Alaska, 780 P.2d 363 (Alaska 1989) . . . . . 12

Gerik-Jones Inc. v. Timberline Industries, 840 P.2d 999 (Alaska 1992) . . . . . . . . . . . . . . . . . . 10

Tesoro Alaska Petroleum Co. v. Kenai Pipeline Co., 746 P.2d 896 (Alaska 1987) . . . . . . . . . . . 9

ADMINISTRATIVE DECISIONS

Chugach Natives, Inc, The Grouse Creek Corp. 80 IBLA 89 (1984) . . . . . . . . . . . . . . . . . . . . . . 7

Ahtna, Inc., 87 IBLA 283 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


FEDERAL STATUTES

43 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

43 U.S.C. § 1602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1602(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1602(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1602(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1610(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

43 U.S.C. § 1610(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1610(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

43 U.S.C. § 1613(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1613(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1615(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1615(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1621(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1621 (f) (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub. L. 94-204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pub. L. 96-487 (94 Stat. 2371) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATE STATUTES

AS § 10.06.633(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
AS § 10.06.633(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11
AS § 10.06.960 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
AS § 10.06.960(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8, 11, 12


FEDERAL REGULATIONS

43 CFR § 2650.0-5(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
43 CFR § 2651.2(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

INTRODUCTION

This action is on remand from the Ninth Circuit for a determination of plaintiff's capacity to sue in light of the certificate of reinstatement issued by the Alaska Division of Corporations on November 21, 2005. The simultaneous opening briefs of the parties on the capacity issues reveal disagreement between the parties on only a small number of questions propounded by the Ninth Circuit in its remand order.

The major dispute is whether plaintiff's corporate status has been validly reinstated. Plaintiff recognizes that Minchumina Natives Incorporated could only be reinstated if it had been organized as a Native village corporation under the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1601 *et seq*. It had not. Plaintiffs' argument that prior to 1988 all Native corporations except for Native regional corporations were Native village corporations is precluded by the clear language of ANCSA, as well as long-standing Interior Department interpretation of ANCSA to which the courts accord great deference. Accordingly, there is no statutory authority for the reinstatement of plaintiffs' corporate status, and plaintiff lacks capacity to bring this action. Because plaintiff has not been validly reinstated, there is no basis to disturb this Court's dismissal of the action.

The purported reinstatement by the Alaska Division of Corporation, does not alter plaintiff's lack of capacity. As shown in defendant's Opening Brief, a purported reinstatement without statutory authorization is without legal effect. Nor is there reason to give deference to the Division of Corporations "interpretation" of the term "Native village corporation." There is nothing in the record to suggest that the Division of Corporations made any conscious interpretation of that term when it issued the certificate of reinstatement to plaintiff. Moreover, Alaska law does not accord deference to agency interpretations of statutory language unless the agency has particular expertise on the matter. The Division of Corporations has no expertise on which corporations were organized as village corporations under ANCSA. Nor does Ninth Circuit law support according deference to the interpretation of the Division of Corporations.

MNI v. DOI, 4:04-cv-0027-CV (JWS)
US Resp. On Capacity                          1

Without valid reinstatement, the claims in this action cannot be brought.  Alaska law permits claims arising out of a dissolved corporation's *contract* to be brought by the assignees of that dissolved corporation.  However, plaintiff's claim arises exclusively out of ANCSA, which as a matter of law, does not constitute a contract.

Finally, the parties agree that if plaintiff has been validly reinstated, that reinstatement would have retroactive effect. Although defendant does not dispute the retroactivity of a valid reinstatement, defendant takes issue with some of the arguments plaintiff employs to arrive at the conclusion of retroactivity.  Specifically, defendant shows below that plaintiff's reliance on the canon of construction in favor of Natives to establish retroactivity is contrary to law and should form no part of the Court's decision on retroactivity.

### I. PLAINTIFF COULD NOT BE REINSTATED BECAUSE IT HAD NOT BEEN ORGANIZED AS A NATIVE VILLAGE CORPORATION

The only authority plaintiff relies upon for its purported reinstatement is AS § 10.06.960(k), which provides:

> Notwithstanding (i) of this section and AS 10.06.633(e), a corporation *that is organized as a Native village corporation under [ANCSA]*, that has been involuntarily dissolved by the commissioner under AS 10.06.633, and that has failed to apply for reinstatement during the period established under AS 10.06.633(e) may be reinstated under AS 10.06.633(e) on or before December 31, 2006. The reinstated corporation and its shareholders have all of the rights, privileges, liabilities, and obligations that would have applied to them if the corporation had not been dissolved, and all corporate and shareholder actions taken during the period of dissolution are considered to be as valid as if dissolution had not occurred.

AS § 10.06.960(k) (Emphasis added).

As we demonstrated in our Opening brief, Minchumina Natives Incorporated organized in 1975 in order to "act as a corporation for a *Native Group* under the provisions of ANCSA for the Native community of Lake Minchumina, as defined in Sections 3(d) and Section 14(h)(2) of ANCSA." Def. Exh. 1, Articles of Incorporation of Minchumina Natives Incorporated (1975) (Emphasis added).[1]/ Minchumina Natives Incorporated identified itself as an "Alaska Native

---

[1]/   Def. Exh. 1-10 are attached to Brief of Defendant on Capacity Issues (Docket # 46). Exhibits
(continued...)

Group Corporation" in its biennial reports. Opening Brief of Minchumina Natives, Inc. at 8, and Plnts' Exh. 5, 7, and 9 attached thereto.

Plaintiff nonetheless now argues that it organized as a Native village corporation rather than as a Native group corporation. This argument arises from the untenable theory (Plnts' Opening Capacity Brief at 7) that prior to 1988 there was no such thing as a Native group corporation and that all Native corporations other than Native regional corporations were Native village corporations. According to plaintiffs, there could be no such thing as a Native Group corporation until Congress inserted a definition of Native Group into ANCSA in 1988. *Id.* at 7-9.

The fatal flaw in this argument is that whether Minchumina Natives Incorporated organized as a "Native village corporation" does not turn on whether there was a statutory definition for "Native group corporation" on the date of Minchumina's incorporation. Entities can exist whether or not defined. Native group corporations existed prior to the 1988 definition. For example, in § 1413 of the Alaska National Interest Conservation Act (ANILCA), Pub. L. 96-487 (94 Stat. 2371) Dec. 2, 1980[2]/, Congress provided:

> Sec. 1413 The Secretary shall pay by grant to each of the Native Group Corporations established pursuant to section 14(h)(2) of the Alaska Native Claims Settlement Act and finally certified as a Native Group, an amount not more than $100,000 or less than $50,000 adjusted according to population of each Group. Funds authorized under this section may be used only for planning, development, and other purposes for which the Native Group Corporations are organized under the Settlement Act.

Congress clearly understood that ANCSA involved the organization of "Native group corporations."

Even more fundamentally, Minchumina Natives Incorporated cannot meet its burden by showing that the status of corporations representing Native groups was undefined. Rather plaintiff must prove that it fell within the definition of Native "village corporation." This

---

[1]/   (...continued)
with higher numbers are attached hereto.

[2]/   The text of sections of ANILCA cited in this brief is attached hereto as Def. Exh.15.

MNI v. DOI, 4:04-cv-0027-CV (JWS)
US Resp. On Capacity                      3

plaintiff cannot do. Since its original enactment, ANCSA has included an unchanged definition of "village corporation," 43 U.S.C. § 1602(j)[3]/ and Minchumina Native Incorporated has never fallen under that definition.

Section 3 of ANCSA, 43 U.S.C. § 1602 sets forth the definition of a number of terms used in the Act, including "Native village," "Native group" and "Village Corporation." *Id.*

ANCSA defined "Village Corporation" as follows:

> (j) "Village Corporation" means an Alaska Native Village Corporation organized under the laws of the State of Alaska as a business for profit or nonprofit corporation to hold, invest, manage and/or distribute lands, property, funds, and other rights and assets *for and on behalf of a Native village* in accordance with the terms of this Act.

Thus a Village Corporation must act on behalf of a Native village. ANCSA defines that term as:

> (c) "Native village" means any tribe, band, clan, group, village, community, or association in Alaska listed in sections 11 and 16 of this Act, or which meets the requirements of this Act, and which the Secretary determines was, on the 1970 census enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance), *composed of twenty-five or more Natives.*

(Emphasis added). This definition establishes a two-prong test, both prongs of which must be met. An entity may satisfy the first prong in one of two ways. An entity automatically satisfies the first prong if it is listed in sections 11 (43 U.S.C. § 1610) or 16 (43 U.S.C. § 1615)[4]/ of ANCSA. Minchumina satisfies this prong because Minchumina Lake is listed in section 11(b)(1). Alternatively, a locality satisfies the first prong if it "meets the requirements of this

---

[3]/   Unless otherwise indicated, all ANCSA section and United States Code cites are to ANCSA as originally enacted. Defendants have attached hereto as Def. Exh. 11, the text of ANCSA as originally enacted.

[4]/   Congress created two lists in order to distinguish the Native Villages in Southeast Alaska (listed in Section 16) from Native Villages elsewhere in the State. The basis for the distinction was that Natives in Southeast Alaska had already received compensation for the extinguishment of aboriginal title pursuant to the Act of July 9, 1968 (82 Stat. 307). 43 U.S.C. § 1615(c). Accordingly, Southeast villages receive fewer benefits under ANCSA than do villages elsewhere in the State. *Cf.* 43 U.S.C. § 1615(b) and 43 U.S.C. § 1613(a).

MNI v. DOI, 4:04-cv-0027-CV (JWS)
US Resp. On Capacity                      4

Act." That language is a reference to ANCSA Section 11(b)(3), which provides for the recognition of "unlisted" villages under certain circumstances, as discussed below.

To satisfy the second prong, an entity must be "composed of twenty-five or more Natives." Minchumina does not satisfy this prong because it has never had more than seven members. Declaration of Carol Lee Gho, Def. Exh. 10. Conversely, ANCSA defines "Native group" as "any tribe, band, clan, village, community or village association of Natives in Alaska composed of *less than twenty-five Natives*, who comprise a majority of the residents of the locality." 43 U.S.C. § 1602(d) (Emphasis added).

Plaintiff would parse the section differently. They argue that the 25-member requirement applies only to the "unlisted" villages dealt with in section 11(b)(3), 43 U.S.C. § 1610(b). According to plaintiffs, all localities listed in section 11(b)(3), 43 U.S.C. § 1610(b) are villages regardless of whether they are composed of 25 members. Further, according to plaintiffs, all Native corporations that were not Regional Corporations were "Village Corporations" until 1988. Plnts' Opening Capacity Brief at 7.

Plaintiff's reading is implausible and precluded by the language of ANCSA for at least five reasons. First, the distinction between a group and a village running throughout the Act is whether the entity is composed of 25 or fewer members. *Cf.* 43 U.S.C. §§ 1602(c) and (d); 1610(b)(2) and (3).

Second, applying the phrase "composed of twenty-five or more Natives" in the definition of "Native village" only to those villages not listed in 43 U.S.C. § 1610(b)(3) would render the phrase in the definition superfluous. The provision describing how "unlisted villages" can "meet[] the requirements of this Act" reads:

> 3. Native villages not listed in subsection (b) (1) hereof shall be eligible for land and benefits under this Act and lands shall be withdrawn pursuant to this section if the Secretary within two and one-half years from the date of enactment of this Act determines that –
>   (A) twenty-five or more Natives were residents of an established village on the 1970 census enumeration date as shown by the the census or other evidence satsifactory to the Secretary, who shall make findings of fact in each instatence; and
>   (B) the village is not of a modern and urban character, and a majority of

the residents are Natives.

Since an unlisted village must demonstrate that at least 25 members actually resided in the village locality on the census enumeration date in order to "meet[] the requirements of this Act," the phrase "composed of twenty-five of more Natives" in the definition of Native village is superfluous if it applies only to unlisted villages. Accordingly, an entity must consist of 25 or more members to be Native village, regardless of whether it is "listed" or "unlisted." .

Third, numerous provisions of ANCSA list Village Corporations and Native groups as contrasting entities. *See, e.g.,* ANCSA § 21(d) and (e) (tax exemption and public land status of "[r]eal property interests conveyed pursuant to this chapter to a Native individual, Native group, Village Corporation or Regional Corporation.")[5]/; ANCSA § 22(a), 43 U.S. 1621(a) (prohibiting application of "percentage fee" contracts to any lands "granted by this Act to the Regional and Village Corporation and to Native groups and individuals"); ANCSA § 22(h) (expiration of withdrawals on land "selected by Village or Regional Corporations or by a Native group"). Moreover, in 1976, Congress amended section 22(f) of ANCSA to make it applicable to Native groups and Urban Corporations, where it had applied only to Village Corporations and Regional Corporations as originally written. *Cf.* ANCSA § 22(f), 43 U.S.C. § 1621 (f) with Section 17 of Pub. L. 94-204 (Def. Exh. 12). [6]/

Fourth, considering groups to be Village Corporations is contrary to other provisions of ANCSA. For example, all benefits to Native Groups are found in section 14(h)(2), 43 U.S.C. § 1613(h)(2). Considering "Village Corporations" to include corporations organized to represent Native groups, would give such corporations additional land rights under ANCSA § 11(b),  43

---

[5]/   In ANILCA § 904 (Def. Exh. 15), Congress subsequently amended these subsections to include the four Urban corporations by inserting "corporation established pursuant to section 14(h)(3)" before "Regional Corporation."

[6]/   Urban corporations likewise undermine plaintiffs' theory that originally all Native corporations were either Regional or Village corporations. The urban corporation localities (Juneau, Ketchikan, Sitka and Kodiak) do not appear on the list in ANCSA § 11(b)(1), 43 U.S.C. § 1610(b)(1), nor are they non-urban as required by ANCSA § 11(b)(3), 43 U.S.C. § 1610(b)(3).

U.S.C. § 1610(b), contrary to the intent of Congress.

Fifth, Congress authorized the Secretary of the Interior to issue "such regulations as may be necessary to carry out the purposes of this Act." ANCSA § 23, 43 U.S.C. § 1624. The Secretary's regulations define "Village corporation" as an "Alaska Native village corporation which is eligible under § 2651.2 of this chapter . . . ." 43 CFR § 2650.0-5(e). To be eligible under that section, there must be 25 Native residents. 43 CFR § 2651.2(b)(1). Further, the Interior Board of Land Appeals, the administrative tribunal authorized by the Secretary to adjudicate the eligibility of Native villages and groups, has repeatedly stated that a Native group is distinguished from a "Native village" on the basis that the group has insufficient numbers to qualify as a village. *Ahtna, Inc.* 87 IBLA 283, 284 (1985), Def. Exh. 13 ("A 'Native group' is distinguished from a 'Native village' on the basis of numbers of Natives. A 'Native village' is composed of 25 or more Natives.")*; see also, Chugach Natives, Inc., The Grouse Creek Corp.* 80 IBLA 89, 90 (1984), Def. Exh. 14. These interpretations are entitled to *Chevron* deference because Congress delegated to the agency the authority to issue regulations implementing ANCSA and to adjudicate eligibility for benefits under ANCSA. *Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1342 (9th Cir. 1990); *Haynes v. United States*, 891 F.2d 235, 238-39 (9th Cir. 1989); *Aleknagik Natives Ltd. v. United States*, 806 F.2d 924 (9th Cir. 1986); *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 n.4 (9th Cir. 1990)

Thus, it is clear that Minchumina, having only seven members, is not now nor ever has been a Native village. However, even assuming *arguendo,* that Minchumina satisfied the definition of a Native village when ANCSA was enacted in 1971, Minchumina Natives Incorporated did not organize as a Village corporation. A Village corporation must be organized to "hold, invest, manage, and /or distribute lands, property, funds and other rights and assets for and on behalf of a Native village in accordance with the terms of this chapter." Whatever, Minchumina's status was in 1971, the Secretary determined in 1973 that Minchumina did not meet the criteria for Native village status because it had fewer than 25 Natives. Complaint ¶ 8. Minchumina Natives Incorporated did not incorporate until 1975. Def. Exh. 2. Accordingly, it

could not organize as a Village corporation at that time. It organized, as required, as a Native group corporation.

## II. THE CLEAR LANGUAGE OF THE STATUTE CANNOT BE OVERRIDDEN BY THE PURPORTED REINSTATEMENT

Plaintiff urges (Plnts' Opening Brief at 18-19) that because the Alaska Division of Corporations reinstated plaintiff, there is no substantial reason to disturb that decision**.** They suggest that the Court must defer to the Division of Corporations "interpretation" that Native groups are "organized as a Native village corporation" under ANCSA as required by  AS § 10.06.960(k).  This argument fails for at least three reasons.

First, there is no evidence that the Division of Corporations made any determination or interpretation whether AS §10.06.960(k) applies to Native groups.  As the parties agreed in the Joint Status Report, the papers submitted in support of reinstatement identified Minchumina Natives, Inc. merely as a "Native corporation."  *Cf. Jacobus v. Alaska,* 338 F.3d 1095, 1106 n.16 (9th Cir. 2003) where the Alaska Public Offices Commission had clearly interpreted a campaign contribution statute in the form of a "Frequently Asked Questions" document.

Second, where a statute uses a clear term of art, such as Native village corporation, deference cannot be used to rewrite the statute to give a different meaning.  *Amoco Production Company v. Village of Gambell,* 480 U.S. 531, 548-49 (1987).  An erroneous reinstatement cannot result in a rewriting of the statute.  *See, Beavers v. Recreation Association of Lake Shore Estates, Inc.,* 130 S.W.3d 702 (Mo. Ct. App, 2004) (where state statute authorized reinstatement only within ten years, certificate of reinstatement issued ten years and three months after forfeiture of corporate rights was without legal effect and could be attacked collaterally); *R.V. McGinnis Theatres & Pay T.V., Inc.  v. Video Independent Theatres, Inc.,* 386 F.2d 592 (10th Cir. 1967) (dissolved corporation had no capacity to sue where there was no statutory authority for Secretary of State's purported reinstatement)

Third, assuming *arguendo* that the Division of Corporations actually considered and made an interpretation of "Native village corporation" in AS § 10.06.960, that interpretation

would not be entitled to deference even under State law.  Plaintiff cites *Jacobus v. Alaska,* 338 F.3d 1095, 1106 n.16, 17 (9th Cir. 2003) for the proposition that a reviewing court will defer to an agency's (including a state agency's) interpretation of its "own statute," so long as that interpretation is reasonable.  Actually, in *Jacobus,* the Ninth Circuit described the conditions under which the Alaska Supreme Court gives deference to a state agency interpretation, citing *Tesoro Alaska Petroleum Co. v.  Kenai Pipeline Co.,* 746 P.2d 896 (Alaska 1987).  That case makes clear that any interpretation by the Division of Corporations of the phrase "organized as a Native village corporation under" ANCSA would not be entitled to deference.

The Alaska Supreme Court articulated two standards for reviewing agency interpretation of statutory terms – the rational basis standard and the independent judgment standard.  *Id.* at 903.  The rational basis test applies only "where the questions at issue implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function."  *Id.*

Conversely, the substitution of judgment standard is applied where, as here,  the questions of law presented do not involve agency expertise or where the agency's specialized knowledge and experience would not be particularly probative of the meaning of the statute.  *Id.*  In such cases the courts substitute their judgment for that of the agency.  *Id.*  The question for the court is whether plaintiff was "organized as a Native village corporation under [ANCSA]."  The State Division of Corporations has no expertise regarding ANCSA and the differences between Native village corporations and Native group corporations.  Thus the agency's specialized expertise in corporate law has no probative value as to the meaning of the phrase at issue.   *See also, Kenaitze Indian Tribe v. State of Alaska,* 860 F.2d 312, 315-16 (9th Cir. 1988) (refusing to accord deference to state agency's interpretation of ANILCA subsistence provisions).

In sum, plaintiff's deference argument is without merit.

**III.  PLAINTIFF'S CLAIMS CANNOT BE PROSECUTED UNLESS PLAINTIFF HAS BEEN VALIDLY REINSTATED.**

Alaska law provides that: "Upon the issuance of the certificate of involuntary dissolution,

MNI v. DOI, 4:04-cv-0027-CV (JWS)
US Resp. On Capacity                                           9

the existence of the corporation ceases...." AS 10.06.633(e). Once a corporation is dissolved it can no longer sue or be sued due to lack of capacity. *Community Electric Service of Los Angeles, Inc. v. National Electrical Contractors Ass'n, Inc.,* 869 F.2d 1235, 1239 (9th Cir.), *cert. denied,* 493 U.S. 891 (1989), *overruled in part on other grounds, Townsend v. Holman Consulting Corp.,* 914 F.2d 1136 (9th Cir. 1990); *R.V. McGinnis Theatres and Pay T.V., Inc. v. Video Independent Theatres, Inc.,* 386 F.2d 592 (10th Cir. 1967), *cert. denied,* 390 U.S. 1014 (1968); *Gerik-Jones Inc. v. Timberline Industries*, 840 P.2d 999 (Alaska 1992).

Plaintiff argues (Plnts' Opening Capacity Brief at 28) that "[u]nder Alaska case law, the claims of even dissolved corporations may be prosecuted." To the extent that plaintiff suggests that the claims in this case may be brought despite the dissolution of Minchumina Natives, Inc., it misstates state law. The case upon which plaintiff relies, *Alaska Continental, Inc. v. Trickey,* 933 P.2d 528 (Alaska 1997), involved an attempt by a successor corporation to bring the claims arising out of contracts of the original dissolved corporation. The Alaska Supreme Court held first that the new corporation "cannot claim to be the same entity that existed before 1989. It therefore requires an alternative basis to assume and maintain a cause of action that accrued to ACI and shareholders [of] ACI." *Id.* At 531. The Alaska Supreme Court found (*Id.)* such a basis in AS § 10.06.633(g), which provides:

> (g) An action arising out of a contract assigned by a corporation dissolved under this section may be brought in the name of the assignee. The fact of assignment and of purchase by the plaintiff shall be set out in the complaint or other process. The defense may avail itself of any defense the defense might have availed itself of in a suite upon the claim by the corporation had it not been dissolved.

The Alaska Supreme Court then found an implied assignment from the dissolved corporation to its shareholders and then to the new corporation. *Alaska Continental, Inc. v. Trickey,* 933 P.2d at 531.

This case is of no assistance to plaintiff because the statutory basis cited by the Alaska Supreme Court for allowing the claims to be brought by the successor corporation is limited on

its face to actions "arising out of a contract." [7]/ AS § 10.06.633(g).  The claims asserted in this action do not "aris[e] out of a contract" as required by A.S. 10.06.633(g).  Plaintiff's claim is based exclusively on ANCSA.  ANCSA creates no contract either express or implied.  *Bay View, Inc. v. United States,* 278 F.3d 1259, 1266 (Fed. Cir. 2001).  And, in any event, the only plaintiff in this action is the dissolved for-profit entity – not the shareholders or the subsequently organized non-profit entity.  Accordingly, the issue of assignment does not arise.

### IV.  PLAINTIFF'S RELIANCE ON THE CANON OF CONSTRUCTION IN FAVOR OF NATIVES TO ESTABLISH THE RETROACTIVE EFFECT OF AS § 10.06.960(K) IS ERRONEOUS

As explained at pages 13-14 of Def's Opening Capacity Brief, assuming *arguendo* that the reinstatement were proper, the parties are in agreement that it has retroactive effect in the sense that the corporation and its shareholders would have "all of the rights, privileges, liabilities, and obligations that would have applied to them if the corporation had not been dissolved," and that the "corporate and shareholder actions taken during the period of dissolution" would be "considered to be as valid as if dissolution had not occurred.." AS § 10.06.960(k).  Thus the parties agree on retroactivity, though they disagree on the proper mechanism for raising that reinstated status.  *See*, Def's Opening Capacity Brief at 14.

Despite the agreement that the reinstatement, if valid, would have retroactive effect, defendant disagrees with a number of arguments by which plaintiff would arrive at the conclusion of retroactivity.  We address some of those disagreements so that plaintiff's arguments do not find their way into the Court's decision on retroactivity.

Plaintiff, at page 25 of its Opening brief states that AS § 10.06.960(k) must be interpreted in accordance with the rule that statutes passed for the benefit of Indians will be construed in their favor.  It is not necessary for the Court to reach that issue, but if it does, it must reject plaintiffs' argument for two reasons.

---

[7]/   The Alaska Supreme Court allowed both contract and tort claims to proceed in *Alaska Continental, Inc.,* but the tort claims, such as tortious interference with a contract, themselves arose out of a contract. *Alaska Continental, Inc. v. Trickey,* 933 P.2d at 535-36.

First, while it is true that both federal and state courts construe *federal* statutes passed for the benefit of Indians in their favor, plaintiffs cite no case for the proposition that the courts construe *state* statutes using that canon of construction. The relationship between Native Americans and the federal government differs significantly from that existing between the states and Native Americans. It would therefore be inappropriate for this Court to assume that the canon applies to the interpretation of Alaska state statutes. *See, Delinquent Property Taxes Owed to the City of Nome, Alaska,* 780 P.2d 363, 370 (Alaska 1989) (Alaska, Rabinowitz J. dissenting) ("Although I fully subscribe to the canon of construction that all ambiguities in federal legislation pertaining to Native Americans should be resolved in favor of Native Americans ....").

Second, plaintiffs argue that ANCSA is a statute passed for the benefit of Indians to which the canon of construction applies. The courts have repeatedly held that the canon of construction does not apply to ANCSA. *United States v. Atlantic Richfield Co.*, 612 F.2d 1132, 1139 (9th Cir. 1980). This is particularly so where, as here, the asserted interpretation of ANCSA is contrary to the interpretation adopted by the Department of Interior. *Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1342 (9th Cir. 1990); *Haynes v. United States*, 891 F.2d 235, 238-39 (9th Cir. 1989); *Aleknagik Natives Ltd. v. United States*, 806 F.2d 924 (9th Cir. 1986); *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 n.4 (9th Cir. 1990).[8]/

In sum, the parties are in agreement on the retroactive nature of AS § 10.06.960(k). It is thus unnecessary to address the canon of construction arguments raised by plaintiff. If the Court does address those issues, it should reject plaintiff's argument that the canon applies.

---

[8]/   This court did apply the canon to ANCSA in *Alaska Public Easement Defense Fund v. Andrus*, 435 F.Supp. 664 (D. Alaska 1977), but that decision does not survive the Ninth Circuit's decision in *Atlantic Richfield*. The Ninth Circuit suggested the applicability of the canon to ANCSA in *Tyonek Native Corp. v. Secretary of the Interior*, 836 F.2d 1237, 1239 (9th Cir. 1988), but then decided the case on the clear meaning of ANCSA without applying the canon.

CONCLUSION

For the foregoing reasons, the Court should rule that plaintiff's purported reinstatement is unauthorized and without legal effect.

RESPECTFULLY SUBMITTED this 30th day of March, 2006, at Anchorage, Alaska.

>S/ Bruce M. Landon
>BRUCE M. LANDON
>Department of Justice
>Environment & Natural Resources Division
>801 B Street, Suite 504
>Anchorage, Alaska  99501-3657
>Telephone: (907) 271-5452
>Facsimile: (907) 271-5827
>Email: bruce.landon@usdoj.gov
>
>Attorney for Federal Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of March, 2007 a copy of the foregoing RESPONSE BRIEF OF DEFENDANT ON CAPACITY ISSUES, Table of Exhibits and Exhibits were served electronically to the following counsel of record:

Mark Andrews

s/ Bruce M. Landon
BRUCE M. LANDON