Pub.L. 92-203 (85 Stat. 688)
December 18, 1971

# An Act

To provide for the settlement of certain land claims of Alaska Natives, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Alaska Native Claims Settlement Act".

### DECLARATION OF POLICY

SEC. 2. Congress finds and declares that—

43 USC § 1601

(a) there is an immediate need for a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims;

(b) the settlement should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation, with maximum participation by Natives in decisions affecting their rights and property, without establishing any permanent racially defined institutions, rights, privileges, or obligations, without creating a reservation system or lengthy wardship or trusteeship, and without adding to the categories of property and institutions enjoying special tax privileges or to the legislation establishing special relationships between the United States Government and the State of Alaska;

(c) no provision of this Act shall replace or diminish any right, privilege, or obligation of Natives as citizens of the United States or of Alaska, or relieve, replace, or diminish any obligation of the United States or of the State or Alaska to protect and promote the rights or welfare of Natives as citizens of the United States or of Alaska; the Secretary is authorized and directed, together with other appropriate agencies of the United States Government, to make a study of all Federal programs primarily designed to benefit Native people and to report back to the Congress with his recommendations for the future management and operation of these programs within three years of the date of enactment of this Act;

(d) no provision of this Act shall constitute a precedent for reopening, renegotiating, or legislating upon any past settlement involving land claims or other matters with any Native organizations, or any tribe, band, or identifiable group of American Indians;

(e) no provision of this Act shall effect a change or changes in the petroleum reserve policy reflected in sections 7421 through 7438 of title 10 of the United States Code except as specifically provided in this Act;

(f) no provision of this Act shall be construed to constitute a jurisdictional act, to confer jurisdiction to sue, nor to grant implied consent to Natives to sue the United States or any of its officers with respect to the claims extinguished by the operation of this Act; and

(g) no provision of this Act shall be construed to terminate or otherwise curtail the activities of the Economic Development Administration or other Federal agencies conducting loan or loan and grant programs in Alaska. For this purpose only, the terms "Indian reservation" and "trust or restricted Indian-owned land areas" in Public Law 89-136, the Public Works and Economic Development Act of 1965, as amended, shall be interpreted to include lands granted to Natives under this Act as long as such lands remain in the ownership of the Native villages or the Regional Corporations.

EXHIBIT 11
Page 1 of 29

H. R. 10367—2

DEFINITIONS

43 USC § 1602

SEC. 3. For the purposes of this Act, the term—
(a) "Secretary" means the Secretary of the Interior;
(b) "Native" means a citizen of the United States who is a person of one-fourth degree or more Alaska Indian (including Tsimshian Indians not enrolled in the Metlaktla Indian Community) Eskimo, or Aleut blood, or combination thereof. The term includes any Native as so defined either or both of whose adoptive parents are not Natives. It also includes, in the absence of proof of a minimum blood quantum, any citizen of the United States who is regarded as an Alaska Native by the Native village or Native group of which he claims to be a member and whose father or mother is (or, if deceased, was) regarded as Native by any village or group. Any decision of the Secretary regarding eligibility for enrollment shall be final;
(c) "Native village" means any tribe, band, clan, group, village, community, or association in Alaska listed in sections 11 and 16 of this Act, or which meets the requirements of this Act, and which the Secretary determines was, on the 1970 census enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance), composed of twenty-five or more Natives;
(d) "Native group" means any tribe, band, clan, village, community, or village association of Natives in Alaska composed of less than twenty-five Natives, who comprise a majority of the residents of the locality;
(e) "Public lands" means all Federal lands and interests therein located in Alaska except: (1) the smallest practicable tract, as determined by the Secretary, enclosing land actually used in connection with the administration of any Federal installation, and (2) land selections of the State of Alaska which have been patented or tentatively approved under section 6(g) of the Alaska Statehood Act, as amended (72 Stat. 341, 77 Stat. 223), or identified for selection by the State prior to January 17, 1969;
(f) "State" means the State of Alaska;
(g) "Regional Corporation" means an Alaska Native Regional Corporation established under the laws of the State of Alaska in accordance with the provisions of this Act;
(h) "Person" means any individual, firm, corporation, association, or partnership;
(i) "Municipal Corporation" means any general unit of municipal government under the laws of the State of Alaska;
(j) "Village Corporation" means an Alaska Native Village Corporation organized under the laws of the State of Alaska as a business for profit or nonprofit corporation to hold, invest, manage and/or distribute lands, property, funds, and other rights and assets for and on behalf of a Native village in accordance with the terms of this Act.
(k) "Fund" means the Alaska Native Fund in the Treasury of the United States established by section 6; and
(l) "Planning Commission" means the Joint Federal-State Land Use Planning Commission established by section 17.

DECLARATION OF SETTLEMENT

43 USC § 1603

SEC. 4. (a) All prior conveyances of public land and water areas in Alaska, or any interest therein, pursuant to Federal law, and all tentative approvals pursuant to section 6(g) of the Alaska Statehood Act, shall be regarded as an extinguishment of the aboriginal title thereto, if any.

EXHIBIT 11
Page 2 of 29

H. R. 10367—3

(b) All aboriginal titles, if any, and claims of aboriginal title in Alaska based on use and occupancy, including submerged land underneath all water areas, both inland and offshore, and including any aboriginal hunting or fishing rights that may exist, are hereby extinguished.

(c) All claims against the United States, the State, and all other persons that are based on claims of aboriginal right, title, use, or occupancy of land or water areas in Alaska, or that are based on any statute or treaty of the United States relating to Native use and occupancy, or that are based on the laws of any other nation, including any such claims that are pending before any Federal or state court or the Indian Claims Commission, are hereby extinguished.

ENROLLMENT

43 USC § 1604

SEC. 5. (a) The Secretary shall prepare within two years from the date of enactment of this Act a roll of all Natives who were born on or before, and who are living on, the date of enactment of this Act. Any decision of the Secretary regarding eligibility for enrollment shall be final.

(b) The roll prepared by the Secretary shall show for each Native, among other things, the region and the village or other place in which he resided on the date of the 1970 census enumeration, and he shall be enrolled according to such residence. Except as provided in subsection (c), a Native eligible for enrollment who is not, when the roll is prepared, a permanent resident of one of the twelve regions established pursuant to subsection 7(a) shall be enrolled by the Secretary in one of the twelve regions, giving priority in the following order to—

(1) the region where the Native resided on the 1970 census date if he had resided there without substantial interruption for two or more years;
(2) the region where the Native previously resided for an aggregate of ten years or more;
(3) the region where the Native was born; and
(4) the region from which an ancestor of the Native came:

The Secretary may enroll a Native in a different region when necessary to avoid enrolling members of the same family in different regions or otherwise avoid hardship.

(c) A Native eligible for enrollment who is eighteen years of age or older and is not a permanent resident of one of the twelve regions may, on the date he files an application for enrollment, elect to be enrolled in a thirteenth region for Natives who are non-residents of Alaska, if such region is established pursuant to subsection 7(c). If such region is not established, he shall be enrolled as provided in subsection (b). His election shall apply to all dependent members of his household who are less than eighteen years of age, but shall not affect the enrollment of anyone else.

ALASKA NATIVE FUND

43 USC § 1605

SEC. 6. (a) There is hereby established in the United States Treasury an Alaska Native Fund into which the following moneys shall be deposited:

(1) $462,500,000 from the general fund of the Treasury, which are authorized to be appropriated according to the following schedule:

(A) $12,500,000 during the fiscal year in which this Act becomes effective;
(B) $50,000,000 during the second fiscal year;

EXHIBIT 11
Page 3 of 29

H. R. 10367—4

(C) $70,000,000 during each of the third, fourth, and fifth fiscal years;
(D) $40,000,000 during the sixth fiscal year; and
(E) $30,000,000 during each of the next five fiscal years.
(2) Four percent interest per annum, which is authorized to be appropriated, on any amount authorized to be appropriated by this paragraph that is not appropriated within six months after the fiscal year in which payable.
(3) $500,000,000 pursuant to the revenue sharing provisions of section 9.
(b) None of the funds paid or distributed pursuant to this section to any of the Regional and Village Corporations established pursuant to this Act shall be expended, donated, or otherwise used for the purpose of carrying on propaganda, or intervening in (including the publishing and distributing of statements) any political campaign on behalf of any candidate for public office. Any person who willfully violates the foregoing provision shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000 or imprisoned not more than twelve months, or both.
(c) After completion of the roll prepared pursuant to section 5, all money in the Fund, except money reserved as provided in section 20 for the payment of attorney and other fees, shall be distributed at the end of each three months of the fiscal year among the Regional Corporations organized pursuant to section 7 on the basis of the relative numbers of Natives enrolled in each region. The share of a Regional Corporation that has not been organized shall be retained in the Fund until the Regional Corporation is organized.

REGIONAL CORPORATIONS

43 USC § 1606

SEC. 7. (a) For purposes of this Act, the State of Alaska shall be divided by the Secretary within one year after the date of enactment of this Act into twelve geographic regions, with each region composed as far as practicable of Natives having a common heritage and sharing common interests. In the absence of good cause shown to the contrary, such regions shall approximate the areas covered by the operations of the following existing Native associations:
(1) Arctic Slope Native Association (Barrow, Point Hope);
(2) Bering Straits Association (Seward Peninsula, Unalakleet, Saint Lawrence Island);
(3) Northwest Alaska Native Association (Kotzebue);
(4) Association of Village Council Presidents (southwest coast, all villages in the Bethel area, including all villages on the Lower Yukon River and the Lower Kuskokwim River);
(5) Tanana Chiefs' Conference (Koyukuk, Middle and Upper Yukon Rivers, Upper Kuskokwim, Tanana River);
(6) Cook Inlet Association (Kenai, Tyonek, Eklutna, Iliamna);
(7) Bristol Bay Native Association (Dillingham, Upper Alaska Peninsula);
(8) Aleut League (Aleutian Islands, Pribilof Islands and that part of the Alaska Peninsula which is in the Aleut League);
(9) Chugach Native Association (Cordova, Tatitlek, Port Graham, English Bay, Valdez, and Seward);
(10) Tlingit-Haida Central Council (southeastern Alaska, including Metlakatla);
(11) Kodiak Area Native Association (all villages on and around Kodiak Island); and
(12) Copper River Native Association (Copper Center, Glennallen, Chitina, Mentasta).

EXHIBIT 11
Page 4 of 29

H. R. 10367—5

Any dispute over the boundaries of a region or regions shall be resolved by a board of arbitrators consisting of one person selected by each of the Native associations involved, and an additional one or two persons, whichever is needed to make an odd number of arbitrators, such additional person or persons to be selected by the arbitrators selected by the Native associations involved.

(b) The Secretary may, on request made within one year of the date of enactment of this Act, by representative and responsible leaders of the Native associations listed in subsection (a), merge two or more of the twelve regions: *Provided*, That the twelve regions may not be reduced to less than seven, and there may be no fewer than seven Regional Corporations.

(c) If a majority of all eligible Natives eighteen years of age or older who are not permanent residents of Alaska elect, pursuant to subsection 5(c), to be enrolled in a thirteenth region for Natives who are non-residents of Alaska, the Secretary shall establish such a region for the benefit of the Natives who elected to be enrolled therein, and they may establish a Regional Corporation pursuant to this Act.

(d) Five incorporators within each region, named by the Native association in the region, shall incorporate under the laws of Alaska a Regional Corporation to conduct business for profit, which shall be eligible for the benefits of this Act so long as it is organized and functions in accordance with this Act. The articles of incorporation shall include provisions necessary to carry out the terms of this Act.

(e) The original articles of incorporation and bylaws shall be approved by the Secretary before they are filed, and they shall be submitted for approval within eighteen months after the date of enactment of this Act. The articles of incorporation may not be amended during the Regional Corporation's first five years without the approval of the Secretary. The Secretary may withhold approval under this section if in his judgment inequities among Native individuals or groups of Native individuals would be created.

(f) The management of the Regional Corporation shall be vested in a board of directors, all of whom, with the exception of the initial board, shall be stockholders over the age of eighteen. The number, terms, and method of election of members of the board of directors shall be fixed in the articles of incorporation or bylaws of the Regional Corporation.

(g) The Regional Corporation shall be authorized to issue such number of shares of common stock, divided into such classes of shares as may be specified in the articles of incorporation to reflect the provisions of this Act, as may be needed to issue one hundred shares of stock to each Native enrolled in the region pursuant to section 5.

(h) (1) Except as otherwise provided in paragraph (2) of this subsection, stock issued pursuant to subsection (g) shall carry a right to vote in elections for the board of directors and on such other questions as properly may be presented to stockholders, shall permit the holder to receive dividends or other distributions from the Regional Corporation, and shall vest in the holder all rights of a stockholder in a business corporation organized under the laws of the State of Alaska, except that for a period of twenty years after the date of enactment of this Act the stock, inchoate rights thereto, and any dividends paid or distributions made with respect thereto may not be sold, pledged, subjected to a lien or judgment execution, assigned in present or future, or otherwise alienated: *Provided*, That such limitation shall not apply to transfers of stock pursuant to a court decree of separation, divorce or child support.

EXHIBIT __11__
Page __5__ of __29__

H. R. 10367—6

(2) Upon the death of any stockholder, ownership of such stock shall be transferred in accordance with his last will and testament or under the applicable laws of intestacy, except that (A) during the twenty-year period after the date of enactment of this Act such stock shall carry voting rights only if the holder thereof through inheritance also is a Native, and (B), in the event the deceased stockholder fails to dispose of his stock by will and has no heirs under the applicable laws of intestacy, such stock shall escheat to the Regional Corporation.

(3) On January 1 of the twenty-first year after the year in which this Act is enacted, all stock previously issued shall be deemed to be canceled, and shares of stock of the appropriate class shall be issued without restrictions required by this Act to each stockholder share for share.

(i) Seventy per centum of all revenues received by each Regional Corporation from the timber resources and subsurface estate patented to it pursuant to this Act shall be divided annually by the Regional Corporation among all twelve Regional Corporations organized pursuant to this section according to the number of Natives enrolled in each region pursuant to section 5. The provisions of this subsection shall not apply to the thirteenth Regional Corporation if organized pursuant to subsection (c) hereof.

(j) During the five years following the enactment of this Act, not less than 10% of all corporate funds received by each of the twelve Regional Corporations under section 6 (Alaska Native Fund), and under subsection (i) (revenues from the timber resources and subsurface estate patented to it pursuant to this Act), and all other net income, shall be distributed among the stockholders of the twelve Regional Corporations. Not less than 45% of funds from such sources during the first five-year period, and 50% thereafter, shall be distributed among the Village Corporations in the region and the class of stockholders who are not residents of those villages, as provided in subsection to it. In the case of the thirteenth Regional Corporation, if organized, not less than 50% of all corporate funds received under section 6 shall be distributed to the stockholders.

(k) Funds distributed among the Village Corporations shall be divided among them according to the ratio that the number of shares of stock registered on the books of the Regional Corporation in the names of residents of each village bears to the number of shares of stock registered in the names of residents in all villages.

(l) Funds distributed to a Village Corporation may be withheld until the village has submitted a plan for the use of the money that is satisfactory to the Regional Corporation. The Regional Corporation may require a village plan to provide for joint ventures with other villages, and for joint financing of projects undertaken by the Regional Corporation that will benefit the region generally. In the event of disagreement over the provisions of the plan, the issues in disagreement shall be submitted to arbitration, as shall be provided for in the articles of incorporation of the Regional Corporation.

(m) When funds are distributed among Village Corporations in a region, an amount computed as follows shall be distributed as dividends to the class of stockholders who are not residents of those villages: The amount distributed as dividends shall bear the same ratio to the amount distributed among the Village Corporations that the number of shares of stock registered on the books of the Regional Corporation in the names of nonresidents of villages bears to the number of shares of stock registered in the names of village residents: *Provided*, That an equitable portion of the amount distributed as dividends may be withheld and combined with Village Corporation funds to finance projects that will benefit the region generally.

EXHIBIT 11
Page 6 of 29

(n) The Regional Corporation may undertake on behalf of one or more of the Village Corporations in the region any project authorized and financed by them.

(o) The accounts of the Regional Corporation shall be audited annually in accordance with generally accepted auditing standards by independent certified public accountants or independent licensed public accountants, certified or licensed by a regulatory authority of the State or the United States. The audits shall be conducted at the place or places where the accounts of the Regional Corporation are normally kept. All books, accounts, financial records, reports, files, and other papers, things, or property belonging to or in use by the Regional Corporation and necessary to facilitate the audits shall be available to the person or persons conducting the audits; and full facilities for verifying transactions with the balances or securities held by depositories, fiscal agent, and custodians shall be afforded to such person or persons. Each audit report or a fair and reasonably detailed summary thereof shall be transmitted to each stockholder, to the Secretary of the Interior and to the Committees on Interior and Insular Affairs of the Senate and the House of Representatives.

(p) In the event of any conflict between the provisions of this section and the laws of the State of Alaska, the provisions of this section shall prevail.

(q) Two or more Regional Corporations may contract with the same business management group for investment services and advice regarding the investment of corporate funds.

## VILLAGE CORPORATIONS

43 USC § 1607

SEC. 8. (a) The Native residents of each Native village entitled to receive lands and benefits under this Act shall organize as a business for profit or nonprofit corporation under the laws of the State before the Native village may receive patent to lands or benefits under this Act, except as otherwise provided.

(b) The initial articles of incorporation for each Village Corporation shall be subject to the approval of the Regional Corporation for the region in which the village is located. Amendments to the articles of incorporation and the annual budgets of the Village Corporations shall, for a period of five years, be subject to review and approval by the Regional Corporation. The Regional Corporation shall assist and advise Native villages in the preparation of articles of incorporation and other documents necessary to meet the requirements of this subsection.

(c) The provisions concerning stock alienation, annual audit, and transfer of stock ownership on death or by court decree provided for Regional Corporations in section 7 shall apply to Village Corporations except that audits need not be transmitted to the Committees on Interior and Insular Affairs of the Senate and the House of Representatives.

## REVENUE SHARING

43 USC § 1608

SEC. 9. (a) The provisions of this section shall apply to all minerals that are subject to disposition under the Mineral Leasing Act of 1920, as amended and supplemented.

(b) With respect to conditional leases and sales of minerals heretofore or hereafter made pursuant to section 6(g) of the Alaska Statehood Act, and with respect to mineral leases of the United States that are or may be subsumed by the State under section 6(h) of the Alaska Statehood Act, until such time as the provisions of subsection (c) become operative the State shall pay into the Alaska Native Fund

EXHIBIT 11
Page 7 of 29

H. R. 10367—8

from the royalties, rentals, and bonuses hereafter received by the State (1) a royalty of 2 per centum upon the gross value (as such gross value is determined for royalty purposes under such leases or sales) of such minerals produced or removed from such lands, and (2) 2 per centum of all rentals and bonuses under such leases or sales, excluding bonuses received by the State at the September 1969 sale of minerals from tentatively approved lands and excluding rentals received pursuant to such sale before the date of enactment of this Act. Such payment shall be made within sixty days from the date the revenues are received by the State.

(c) Each patent hereafter issued to the State under the Alaska Statehood Act, including a patent of lands heretofore selected and tentatively approved, shall reserve for the benefit of the Natives, and for payment into the Alaska Native Fund, (1) a royalty of 2 per centum upon the gross value (as such gross value is determined for royalty purposes under any disposition by the State) of the minerals thereafter produced or removed from such lands, and (2) 2 per centum of all revenues thereafter derived by the State from rentals and bonuses from the disposition of such minerals.

(d) All bonuses, rentals, and royalties received by the United States after the date of enactment of this Act from the disposition by it of such minerals in public lands in Alaska shall be distributed as provided in the Alaska Statehood Act, except that prior to calculating the shares of the State and the United States as set forth in such Act, (1) a royalty of 2 per centum upon the gross value of such minerals produced (as such gross value is determined for royalty purposes under the sale or lease), and (2) 2 per centum of all rentals and bonuses shall be deducted and paid into the Alaska Native Fund. The respective shares of the State and the United States shall be calculated on the remaining balance.

(e) The provisions of this section shall be enforceable by the United States for the benefit of the Natives, and in the event of default by the State in making the payments required, in addition to any other remedies provided by law, there shall be deducted annually by the Secretary of the Treasury from any grant-in-aid or from any other sums payable to the State under any provision of Federal law an amount equal to any such underpayment, which amount shall be deposited in the Fund.

(f) Revenues received by the United States or the State as compensation for estimated drainage of oil or gas shall, for the purposes of this section, be regarded as revenues from the disposition of oil and gas. In the event the United States or the State elects to take royalties in kind, there shall be paid into the Fund on account thereof an amount equal to the royalties that would have been paid into the Fund under the provisions of this section had the royalty been taken in cash.

(g) The payments required by this section shall continue only until $500,000,000 have been paid into the Alaska Native Fund. Thereafter the provisions of this section shall not apply, and the reservation required in patents under this section shall be of no further force and effect.

(h) When computing the final payment into the Fund the respective shares of the United States and the State with respect to payments to the Fund required by this section shall be determined pursuant to this subsection and in the following order:

(1) first, from sources identified under subsections (b) and (c) hereof; and

(2) then, from sources identified under subsection (d) hereof.

(i) The provisions of this section do not apply to mineral revenues received from the Outer Continental Shelf.

EXHIBIT 11
Page 8 of 29

H. R. 10367—9

STATUTE OF LIMITATIONS

43 USC § 1609   SEC. 10. (a) Notwithstanding any other provision of law, any civil action to contest the authority of the United States to legislate on the subject matter or the legality of this Act shall be barred unless the complaint is filed within one year of the date of enactment of this Act, and no such action shall be entertained unless it is commenced by a duly authorized official of the State. Exclusive jurisdiction over such action is hereby vested in the United States District Court for the District of Alaska. The purpose of this limitation on suits is to insure that, after the expiration of a reasonable period of time, the right, title, and interest of the United States, the Natives, and the State of Alaska will vest with certainty and finality and may be relied upon by all other persons in their relations with the State, the Natives, and the United States.

(b) In the event that the State initiates litigation or voluntarily becomes a party to litigation to contest the authority of the United States to legislate on the subject matter or the legality of this Act, all rights of land selection granted to the State by the Alaska Statehood Act shall be suspended as to any public lands which are determined by the Secretary to be potentially valuable for mineral development, timber, or other commercial purposes, and no selections shall be made, no tentative approvals shall be granted, and no patents shall be issued for such lands during the pendency of such litigation. In the event of such suspension, the State's right of land selection pursuant to section 6 of the Alaska Statehood Act shall be extended for a period of time equal to the period of time the selection right was suspended.

WITHDRAWAL OF PUBLIC LANDS

43 USC § 1610   SEC. 11. (a) (1) The following public lands are withdrawn, subject to valid existing rights, from all forms of appropriation under the public land laws, including the mining and mineral leasing laws, and from selection under the Alaska Statehood Act, as amended:

(A) The lands in each township that encloses all or part of any Native village identified pursuant to subsection (b);

(B) The lands in each township that is contiguous to or corners on the township that encloses all or part of such Native village; and

(C) The lands in each township that is contiguous to or corners on a township containing lands withdrawn by paragraph (B) of this subsection.

The following lands are excepted from such withdrawal: lands in the National Park System and lands withdrawn or reserved for national defense purposes other than Naval Petroleum Reserve Numbered 4.

(2) All lands located within the townships described in subsection (a) (1) hereof that have been selected by, or tentatively approved to, but not yet patented to, the State under the Alaska Statehood Act are withdrawn, subject to valid existing rights, from all forms of appropriation under the public land laws, including the mining and mineral leasing laws, and from the creation of third party interests by the State under the Alaska Statehood Act.

(3) (A) If the Secretary determines that the lands withdrawn by subsections (a) (1) and (2) hereof are insufficient to permit a Village or Regional Corporation to select the acreage it is entitled to select, the Secretary shall withdraw three times the deficiency from the nearest unreserved, vacant and unappropriated public lands. In making this withdrawal the Secretary shall, insofar as possible, withdraw public lands of a character similar to those on which the village is located and

EXHIBIT 11
Page 9 of 29

H. R. 10367—10

in order of their proximity to the center of the Native village: *Provided*, That if the Secretary, pursuant to section 17, and 22(e) determines there is a need to expand the boundaries of a National Wildlife Refuge to replace any acreage selected in the Wildlife Refuge System by the Village Corporation the withdrawal under this section shall not include lands in the Refuge.

(B) The Secretary shall make the withdrawal provided for in subsection (3)(A) hereof on the basis of the best available information within sixty days of the date of enactment of this Act, or as soon thereafter as practicable.

(b)(1) The Native villages subject to this Act are as follows:

NAME OF PLACE AND REGION

Afognak, Afognak Island.
Akhiok, Kodiak.
Akiachak, Southwest Coastal Lowland.
Akiak, Southwest Coastal Lowland.
Akutan, Aleutian.
Alakanuk, Southwest Coastal Lowland.
Alatna, Koyukuk-Lower Yukon.
Aleknagik, Bristol Bay.
Allakaket, Koyukuk-Lower Yukon.
Ambler, Bering Strait.
Anaktuvuk, Pass, Arctic Slope.
Andreafsey, Southwest Coastal Lowland.
Aniak, Southwest Coastal Lowland.
Anvik, Koyukuk-Lower Yukon.
Arctic Village, Upper Yukon-Porcupine.
Atka, Aleutian.
Atkasook, Arctic Slope.
Atmautluak, Southwest Coastal Lowland.
Barrow, Arctic Slope.
Beaver, Upper Yukon-Porcupine.
Belkofsky, Aleutian.
Bethel, Southwest Coastal Lowland.
Bill Moore's, Southwest Coastal Lowland.
Biorka, Aleutian.
Birch Creek, Upper Yukon-Porcupine.
Brevig Mission, Bering Strait.
Buckland, Bering Strait.
Candle, Bering Strait.
Cantwell, Tanana.
Canyon Village, Upper Yukon-Porcupine.
Chalkyitsik, Upper Yukon-Porcupine.
Chanilut, Southwest Coastal Lowland.
Cherfornak, Southwest Coastal Lowland.
Chevak, Southwest Coastal Lowland.
Chignik, Kodiak.
Chignik Lagoon, Kodiak.
Chignik Lake, Kodiak.
Chistochina, Copper River.
Chitina, Copper River.
Chukwuktoligamute, Southwest Coastal Lowland.
Circle, Upper Yukon-Porcupine.
Clark's Point, Bristol Bay.
Copper Center, Copper River.
Crooked Creek, Upper Kuskokwim.
Deering, Bering Strait.

EXHIBIT 11
Page 10 of 29