# Ninety-fourth Congress of the United States of America

## AT THE FIRST SESSION

*Begun and held at the City of Washington on Tuesday, the fourteenth day of January, one thousand nine hundred and seventy-five*

# An Act

To provide, under or by amendment of the Alaska Native Claims Settlement Act, for the late enrollment of certain Natives, the establishment of an escrow account for the proceeds of certain lands, the treatment of certain payments and grants, and the consolidation of existing regional corporations, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That (a) the Secretary of the Interior (hereinafter in this Act referred to as the "Secretary") is directed to review those applications submitted within one year from the date of enactment of this Act by applicants who failed to meet the March 30, 1973, deadline for enrollment established by the Secretary pursuant to the Alaska Native Claims Settlement Act (hereinafter in this Act referred to as the "Settlement Act"), and to enroll those Natives under the provisions of that Act who would have been qualified if the March 30, 1973, deadline had been met: *Provided,* That Natives enrolled under this Act shall be issued stock under the Settlement Act together with a pro rata share of all future distributions under the Settlement Act which shall commence beginning with the next regularly scheduled distribution after the enactment of this Act: *Provided further,* That land entitlement of any Native village, Native group, Village Corporation, or Regional Corporation, all as defined in such Act, shall not be affected by any enrollment pursuant to this Act, and that no tribe, band, clan, group, village, community, or association not otherwise eligible for land or other benefits as a "Native village", as defined in such Act, shall become eligible for land or other benefits as a Native village because of any enrollment pursuant to this Act: *Provided further,* That no tribe, band, clan, village, community, or village association not otherwise eligible for land or other benefits as a "Native group", as defined in such Act, shall become eligible for land or other benefits as a Native group because of any enrollment pursuant to this Act: *And provided further,* That any "Native group", as defined in such Act, shall not lose its status as a Native group because of any enrollment pursuant to this Act.

(b) The Secretary is authorized to poll individual Natives properly enrolled to Native villages or Native groups which are not recognized as Village Corporations under section 11 of the Settlement Act and which are included within the boundaries of former reserves the Village Corporation or Corporations of which elected to acquire title to the surface and subsurface estate of said reserves pursuant to subsection 19(b) of the Settlement Act. The Secretary may allow these individuals the option to enroll to a Village Corporation which elected the surface and subsurface title under section 19(b) or remain enrolled to the Regional Corporation in which the village or group is located on an at-large basis: *Provided,* That nothing in this subsection shall affect existing entitlement to land of any Regional Corporation pursuant to section 12(b) or 14(h)(8) of the Settlement Act.

(c) In those instances where, on the roll prepared under section 5 of the Settlement Act, there were enrolled as residents of a place on April 1, 1970, a sufficient number of Natives required for a Native

EXHIBIT 12
Page 1 of 12

S. 1469—2

village or Native group, as the case may be, and it is subsequently and finally determined that such place is not eligible for land benefits under the Act on grounds which include a lack of sufficient number of residents, the Secretary shall, in accordance with the criteria for residence applied in the final determination of eligibility, redetermine the place of residence on April 1, 1970, of each Native enrolled to such place, and the place of residence as so redetermined shall be such Native's place of residence on April 1, 1970, for all purposes under the Settlement Act: *Provided*, That each Native whose place of residence on April 1, 1970, is changed by reason of this subsection shall be issued stock in the Native corporation or corporations in which such redetermination entitles him to membership and all stock issued to such Native by any Native Corporation in which he is no longer eligible for membership shall be deemed canceled: *Provided further*, That no redistribution of funds made by any Native Corporation on the basis of prior places of residence shall be affected: *Provided further*, That land entitlements of any Native village, Native group, Village Corporation, Regional Corporation, or corporations organized by Natives residing in Sitka, Kenai, Juneau, or Kodiak, all as defined in said Act, shall not be affected by any determination of residence made pursuant to this subsection, and no tribe, band, clan, group, village, community, or association not otherwise eligible for land or other benefits as a "Native group" as defined in said Act, shall become eligible for land or other benefits as a Native group because of any redetermination of residence pursuant to this subsection: *Provided further*, That any distribution of funds from the Alaska Native Fund pursuant to subsection (c) of section 6 of the Settlement Act made by the Secretary or his delegate prior to any redetermination of residency shall not be affected by the provisions of this subsection. Each Native whose place of residence is subject to redetermination as provided in this subsection shall be given notice and an opportunity for hearing in connection with such redetermination as shall any Native Corporation which it appears may gain or lose stockholders by reason of such redetermination of residence.

Sec. 2. (a) From and after the date of enactment of this Act, or January 1, 1976, whichever occurs first, any and all proceeds derived from contracts, leases, permits, rights-of-way, or easements pertaining to lands or resources of lands withdrawn for Native selection pursuant to the Settlement Act shall be deposited in an escrow account which shall be held by the Secretary until lands selected pursuant to that Act have been conveyed to the selecting corporation or individual entitled to receive benefits under such Act. As such withdrawn or formerly reserved lands are conveyed, the Secretary shall pay from such account the proceeds, together with interest which derive from contracts, leases, permits, rights-of-way, or easements, pertaining to such lands or resources of such lands, to the appropriate corporation or individual entitled to receive benefits under the Settlement Act. The proceeds derived from contracts, leases, permits, rights-of-way, or easements, pertaining to lands withdrawn or reserved, but not selected or elected pursuant to such Act, shall, upon the expiration of the selection or election rights of the corporations and individuals for whose benefit such lands were withdrawn or reserved, be paid as would have been required by law were it not for the provisions of this Act.

(b) The Secretary is authorized to deposit in the Treasury of the United States the escrow account proceeds referred to in subsection (a) of this section, and the United States shall pay interest thereon semiannually from the date of deposit to the date of payment with simple interest at the rate determined by the Secretary of the Treasury

EXHIBIT 12
Page 2 of 12

S. 1469—3

to be the rate payable on short-term obligations of the United States prevailing at the time of payment: *Provided*, That the Secretary in his discretion may withdraw such proceeds from the United States Treasury and reinvest such proceeds in the manner provided by the first section of the Act of June 24, 1938 (52 U.S.C. 1037): *Provided further*, That this section shall not be construed to create or terminate any trust relationship between the United States and any corporation or individual entitled to receive benefits under the Settlement Act.

(c) Any and all proceeds from public easements reserved pursuant to section 17(b)(3) of the Settlement Act, from or after the date of enactment of this Act, shall be paid to the grantee of such conveyance in accordance with such grantee's proportionate share.

(d) To the extent that there is a conflict between the provisions of this section and any other Federal laws applicable to Alaska, the provisions of this section will govern. Any payment made to any corporation or any individual under authority of this section shall not be subject to any prior obligation under section 9(d) or 9(f) of the Settlement Act.

SEC. 3. The Settlement Act is amended by adding at the end thereof the following new section:

"TEMPORARY EXEMPTION FROM CERTAIN SECURITIES LAWS

"SEC. 28. Any corporation organized pursuant to this Act shall be exempt from the provisions of the Investment Company Act of 1940 (54 Stat. 789), the Securities Act of 1933 (48 Stat. 74), and the Securities Exchange Act of 1934 (48 Stat. 881), as amended, through December 31, 1991. Nothing in this section, however, shall be construed to mean that any such corporation shall or shall not, after such date, be subject to the provisions of such Acts. Any such corporation which, but for this section, would be subject to the provisions of the Securities Exchange Act of 1934 shall transmit to its stockholders each year a report containing substantially all the information required to be included in an annual report to stockholders by a corporation which is subject to the provisions of such Act.".

SEC. 4. The Settlement Act is further amended by adding at the end thereof the following new section:

"RELATION TO OTHER PROGRAMS

"SEC. 29. (a) The payments and grants authorized under this Act constitute compensation for the extinguishment of claims to land, and shall not be deemed to substitute for any governmental programs otherwise available to the Native people of Alaska as citizens of the United States and the State of Alaska.

"(b) Notwithstanding section 5(a) and any other provision of the Food Stamp Act of 1964 (78 Stat. 703), as amended, in determining the eligibility of any household to participate in the food stamp program, any compensation, remuneration, revenue, or other benefit received by any member of such household under the Settlement Act shall be disregarded.".

SEC. 5. For purposes of the first section of the Act of February 12, 1929 (45 Stat. 1164), as amended, and the first section of the Act of June 24, 1938 (52 Stat. 1037), the Alaska Native Fund shall, pending distributions under section 6(c) of the Settlement Act, be considered to consist of funds held in trust by the Government of the United States for the benefit of Indian tribes: *Provided*, That nothing in this section shall be construed to create or terminate any trust relationship

EXHIBIT 12
Page 3 of 12

S. 1469—4

between the United States and any corporation or individual entitled to receive benefits under the Settlement Act.

SEC. 6. The Settlement Act is further amended by adding a new section 30 to read as follows:

"MERGER OF NATIVE CORPORATIONS

"SEC. 30. (a) Notwithstanding any provision of this Act, any corporation created pursuant to section 7(d), 8(a), 14(h)(2), or 14(h)(3) within any of the twelve regions of Alaska, as established by section 7(a), may, at any time, merge or consolidate, pursuant to the applicable provisions of the laws of the State of Alaska, with any other of such corporation or corporations created within or for the same region. Any corporations resulting from mergers or consolidations further may merge or consolidate with other such merged or consolidated corporations within the same region or with other of the corporations created in said region pursuant to section 7(d), 8(a), 14(h)(2), or 14(h)(3).

"(b) Such mergers or consolidations shall be on such terms and conditions as are approved by vote of the shareholders of the corporations participating therein, including, where appropriate, terms providing for the issuance of additional shares of Regional Corporation stock to persons already owning such stock, and may take place pursuant to votes of shareholders held either before or after the enactment of this section: *Provided*, That the rights accorded under Alaska law to dissenting shareholders in a merger or consolidation may not be exercised in any merger or consolidation pursuant to this Act effected prior to December 19, 1991. Upon the effectiveness of any such mergers or consolidations the corporations resulting therefrom and the shareholders thereof shall succeed and be entitled to all the rights, privileges, and benefits of this Act, including but not limited to the receipt of lands and moneys and exemptions from various forms of Federal, State, and local taxation, and shall be subject to all the restrictions and obligations of this Act as are applicable to the corporations and shareholders which and who participated in said mergers or consolidations or as would have been applicable if the mergers or consolidations and transfers of rights and titles thereto had not taken place: *Provided*, That, where a Village Corporation organized pursuant to section 19(b) of this Act merges or consolidates with the Regional Corporation of the region in which such village is located or with another Village Corporation of that region, no provision of such merger or consolidation shall be construed as increasing or otherwise changing regional enrollments for purposes of distribution of the Alaska Native Fund; land selection eligibility; or revenue sharing pursuant to sections 6(c), 7(m), 12(b), 14(h)(8), and 7(i) of this Act.

"(c) Notwithstanding the provisions of section 7(j) or (m), in any merger or consolidation in which the class of stockholders of a Regional Corporation who are not residents of any of the villages in the region are entitled under Alaska law to vote as a class, the terms of the merger or consolidation may provide for the alteration or elimination of the right of said class to receive dividends pursuant to said section 7(j) or (m). In the event that such dividend right is not expressly altered or eliminated by the terms of the merger or consolidation, such class of stockholders shall continue to receive such dividends pursuant to section 7(j) or (m) as would have been applicable if the merger or consolidation had not taken place and all Village Corporations within the affected region continued to exist separately.

EXHIBIT 12
Page 4 of 12

S. 1469—5

"(d) Notwithstanding any other provision of this section or of any other law, no corporation referred to in this section may merge or consolidate with any other such corporations unless that corporation's shareholders have approved such merger or consolidation.

"(e) The plan of merger or consolidation shall provide that the right of any affected Village Corporation pursuant to section 14(f) to withhold consent to mineral exploration, development, or removal within the boundaries of the Native village shall be conveyed, as part of the merger or consolidation, to a separate entity composed of the Native residents of such Native village.".

SEC. 7. Section 17(a)(10) of the Settlement Act is amended to read as follows:

"(10) The Planning Commission shall submit, in accordance with this paragraph, comprehensive reports to the President of the United States, the Congress, and the Governor and legislature of the State with respect to its planning and other activities under this Act, together with its recommendations for programs or other actions which it determines should be implemented or taken by the United States and the State. An interim, comprehensive report covering the above matter shall be so submitted on or before May 30, 1976. A final and comprehensive report covering the above matter shall be so submitted on or before May 30, 1979. The Commission shall cease to exist effective June 30, 1979.".

SEC. 8. (a) Notwithstanding the October 6, 1975, order of the United States District Court for the District of Columbia in the case of Alaska Native Association of Oregon et al. against Rogers C. B. Morton et al., Civil Action Numbered 2133-73, and Alaska Federation of Natives International, Inc., et al. against Rogers C. B. Morton, et al., Civil Action Numbered 2141-73 (   F. Supp.   ), changes in enrollment of Natives which are necessitated or permitted by such order shall in no way affect land selection entitlements of any Alaska Regional or Village Corporation nor any Native village or group eligibility.

(b) Stock previously issued by any of the twelve Regional Corporations in Alaska or by Village Corporations to any Native who is enrolled in the thirteenth region pursuant to said order shall, upon said enrollment, be canceled by the issuing corporation without liability to it or the Native whose stock is so canceled: *Provided*, That, in the event that a Native enrolled in the thirteenth region pursuant to said order shall elect to re-enroll in the appropriate Regional Corporation in Alaska pursuant to the sixth ordering paragraph of that order, stock of such Native may be canceled by the Thirteenth Regional Corporation and stock may be issued to such Native by the appropriate Regional Corporation in Alaska without liability to either corporation or to the Native.

(c) Whenever additional enrollment under the Settlement Act is permitted pursuant to this Act or any other provision of law, any Native enrolling under such authority who is determined not to be a permanent resident of the State of Alaska under criteria established pursuant to the Settlement Act shall, at the time of enrollment, elect whether to be enrolled in the thirteenth region or in the region determined pursuant to the provisions of section 5(b) of such Act and such election shall apply to all dependent members of such Native's household who are less than eighteen years of age on the date of such election.

(d) No change in the final roll of Natives established by the Secretary pursuant to section 5 of the Settlement Act resulting from any regulation promulgated by the Secretary of the Interior providing for

EXHIBIT 12
Page 5 of 12

S. 1469—6

the disenrollment of Natives shall affect land entitlements of any Regional or Village Corporation or any Native village or group eligibility.

Sec. 9. Section 16 of the Settlement Act is amended by inserting at the end thereof a new subsection (d) to read as follows:

"(d) The lands enclosing and surrounding the village of Klukwan which were withdrawn by subsection (a) of this section are hereby rewithdrawn to the same extent and for the same purposes as provided by said subsection (a) for a period of one year from the date of enactment of this subsection, during which period the Village Corporation for the village of Klukwan shall select an area equal to twenty-three thousand and forty acres in accordance with the provisions of subsection (b) of this section and such Corporation and the shareholders thereof shall otherwise participate fully in the benefits provided by this Act to the same extent as they would have participated had they not elected to acquire title to their former reserve as provided by section 19(b) of this Act: *Provided*, That nothing in this subsection shall affect the existing entitlement of any Regional Corporation to lands pursuant to section 14(h)(8) of this Act: *Provided further*, That the foregoing provisions of this subsection shall not become effective unless and until the Village Corporation for the village of Klukwan shall quitclaim to Chilkat Indian Village, organized under the provisions of the Act of June 18, 1934 (48 Stat. 984), as amended by the Act of May 1, 1936 (49 Stat. 1250), all its right, title, and interest in the lands of the reservation defined in and vested by the Act of September 2, 1957 (71 Stat. 596), which lands are hereby conveyed and confirmed to said Chilkat Indian Village in fee simple absolute, free of trust and all restrictions upon alienation, encumbrance, or otherwise: *Provided further*, That the United States and the Village Corporation for the village of Klukwan shall also quitclaim to said Chilkat Indian Village any right or interest they may have in and to income derived from the reservation lands defined in and vested by the Act of September 2, 1957 (71 Stat. 597), after the date of enactment of this Act and prior to the date of enactment of this subsection.".

Sec. 10. Section 16(b) of the Settlement Act is amended by adding at the end thereof the following: "Such allocation as the Regional Corporation for the southeastern Alaska region shall receive under section 14(h)(8) shall be selected and conveyed from lands not selected by such Village Corporations that were withdrawn by subsection (a) of this section, except lands on Admiralty Island in the Angoon withdrawal area and, without the consent of the Governor of the State of Alaska or his delegate, lands in the Saxman and Yakutat withdrawal areas.".

Sec. 11. The boundary between the southeastern and Chugach regions shall be the 141st meridian: *Provided*, That the Regional Corporation for the Chugach region shall accord to the Natives enrolled to the Village of Yakutat the same rights and privileges to use any lands which may be conveyed to the Regional Corporation in the vicinity of Icy Bay for such purposes as such Natives have traditionally made thereof, including, but not limited to, subsistence hunting, fishing and gathering, as the Regional Corporation accords to its own shareholders, and shall take no unreasonable or arbitrary action relative to such lands for the primary purpose and having the effect, of impairing or curtailing such rights and privileges.

Sec. 12. (a) The purpose of this section is to provide for the settlement of certain claims, and in so doing to consolidate ownership among the United States, the Cook Inlet Region, Incorporated (hereinafter in this section referred to as the "Region"), and the State of Alaska,

EXHIBIT 12
Page 6 of 12

S. 1469—7

within the Cook Inlet area of Alaska in order to facilitate land management and to create land ownership patterns which encourage settlement and development in appropriate areas. The provisions of this section shall take effect at such time as all of the following have taken place:

    (1) the State of Alaska has conveyed or irrevocably obligated itself to convey lands to the United States for exchange, hereby authorized, with the Region in accordance with the document referred to in subsection (b);

    (2) the Region and all plaintiffs/appellants have withdrawn from Cook Inlet against Kleppe, numbered 75-2232, ninth circuit, and such proceedings have been dismissed with prejudice; and

    (3) all Native village selections under section 12 of the Settlement Act of the lands within Lake Clark, Lake Kontrashibuna, and Mulchatna River deficiency withdrawals have been irrevocably withdrawn and waived.

The conveyances described in paragraph (1) of this subsection shall not be subject to the provisions of section 6(i) of the Alaska Statehood Act (72 Stat. 339).

  (b) The Secretary shall make the following conveyances to the Region, in accordance with the specific terms, conditions, procedures, covenants, reservations, and other restrictions set forth in the document entitled "Terms and Conditions for Land Consolidation and Management in Cook Inlet Area", which was submitted to the House Committee on Interior and Insular Affairs on December 10, 1975, the terms of which are hereby ratified as to the duties and obligations of the United States and the Region, as a matter of Federal law:

    (1) title to approximately 10,240 acres of land within the Kenai National Moose Range; except that there shall be no conveyance of the bed of Lake Tustamena, or the mineral estate in the waterfront zone described in the document referred to in this subsection;

    (2) title to oil and gas and coal in not to exceed 9.5 townships within the Kenai National Moose Range;

    (3) title to Federal interests in township 10 south, range 9 west, F.M., and township 20 north, range 9 east, S.M.;

    (4) title to township 1 south, range 21 west, S.M.: sections 3 to 10, 15 to 22, 29, and 30; and rights to metalliferous minerals in the following sections in township 1 north, range 21 west, S.M.: sections 13, 14, 15, 22, 23, 24, 25, 26, 27, 28, 32, 33, 34, 35, 36;

    (5) title to twenty-nine and sixty-six hundredths townships of land outside the boundaries of Cook Inlet Region: unless pursuant to the document referred to in this subsection a greater or lesser entitlement shall exist, in which case the Secretary shall convey such entitlement;

    (6) title to lands selected by the Region from a pool which shall be established by the Secretary and the Administrator of General Services: *Provided*, That conveyances pursuant to this paragraph shall not be subject to the provisions of section 22(1) of the Settlement Act: *Provided further*, That conveyances pursuant to this paragraph shall be made in exchange for lands or rights to select lands outside the boundaries of Cook Inlet Region as described in paragraph (5) of this subsection and on the basis of values determined by agreement among the parties, notwithstanding any other provision of law. Effective upon their conveyance, the lands referred to in paragraph (1) of this subsection are excluded from the Kenai National Moose Range, but they shall automatically become part of the range and subject

EXHIBIT 12
Page 7 of 12

S. 1469—8

to the laws and regulations applicable thereto upon title thereafter vesting in the United States. The Secretary is authorized to acquire lands formerly within the range with the concurrence of the Region so long as the Region owns such lands. Section 22(e) of the Settlement Act, concerning refuge replacement, shall apply with respect to lands conveyed pursuant to paragraphs (1) and (2) of this subsection, except that the Secretary may designate for replacement land twice the amount of any land conveyed without restriction to a native corporation.

No lands outside the exterior boundaries of Cook Inlet Region shall be conveyed to the Region, unless, in the following circumstances, the consent of other Native Corporations is obtained:

    (i) Where the township to be nominated is located within an area withdrawn as of December 15, 1975, pursuant to section 11(a)(1) of the Settlement Act, the Region shall obtain the consent of the Regional Corporation and Village Corporation affected.

    (ii) Where the township to be nominated is located within an area withdrawn pursuant to section 11(a)(3) of the Settlement Act as of December 15, 1975, the Region shall obtain the consent of the Region in which the township is located.

There shall be established a buffer zone outside the withdrawals described in subparagraphs (i) and (ii) which zone shall extend one township from any such section 11(a)(3) withdrawal and one and one-half townships from any section 11(a)(1) withdrawal. Any nomination of a township within such zone shall be subject to the consent of the Region, or of the Village Corporation if adjacent to a section 11(a)(1) withdrawal: *Provided, however*, That the affected Regional Corporation may designate additional lands to be included by substitution in the buffer zone so long as the buffer zone location is no greater than two townships in width and the total acreage of the buffer zone is not enlarged. The affected Regional Corporation shall designate the enlarged buffer zone, if any, no later than six months following the passage of this Act. Any use or development by the Region of land conveyed under this paragraph shall give due protection to the existing subsistence uses of such lands by the residents of the area; and no easement across Village Corporation lands to lands conveyed under this paragraph shall be established without the consent of the said Village Corporation or Corporations.

  (c) The lands and interests conveyed to the Region under the foregoing subsections of this section and the lands provided by the State exchange under subsection (a)(1) of this section, shall be considered and treated as conveyances under the Settlement Act unless otherwise provided, and shall constitute the Region's full entitlement under sections 12(c) and 14(h)(8) of the Settlement Act. Of such lands, 3.58 townships of oil and gas and coal in the Kenai National Moose Range shall constitute the full surface and subsurface entitlement of the Region under section 14(h)(8). The lands which would comprise the difference in acreage between the lands actually conveyed under and referred to in the foregoing subsections of this section, and any final determination of what the Region's acreage rights under sections 12(c) and 14(h)(8) of the Settlement Act would have been, if the conveyances set forth in this section to the Region had not been executed, shall be retained by the United States and shall not be available for conveyance to any Regional Corporation or Village Corporation, notwithstanding any provisions of the Settlement Act to the contrary.

  (d)(1) The Secretary shall convey to the State of Alaska all right, title, and interest of the United States in and to all of the following lands:

EXHIBIT 12
Page 8 of 12

S. 1469—9

(i) At least 22.8 townships and no more than 27 townships of land from those presently withdrawn under section 17(d)(2) of the Settlement Act in the Lake Iliamna area and within the Nushagak River or Koksetna River drainages near lands heretofore selected by the State, the amount and identities of which shall be determined pursuant to the document referred to in subsection (b); and

(ii) 26 townships of lands in the Talkeetna Mountains, Kamishak Bay, and Tutna Lake areas, the identities of which are set forth in the document referred to in subsection (b).

All lands granted to the State of Alaska pursuant to this subsection shall be regarded for all purposes as if conveyed to the State under and pursuant to section 6 of the Alaska Statehood Act: *Provided, however,* That this grant of lands shall not constitute a charge against the total acreage to which the State is entitled under section 6(b) of the Alaska Statehood Act.

(2) The Secretary is authorized and directed to convey to the State of Alaska, without consideration, all right, title, and interest of the United States in and to all of that tract generally known as the Campbell tract and more particularly identified in the document referred to in subsection (b) except for one compact unit of land which he determines, after consultation with the State of Alaska, is actually needed by the Bureau of Land Management for its present operations: *Provided,* That in no event shall the unit of land so excepted exceed 1,000 acres in size. The land authorized to be conveyed pursuant to this paragraph shall be used for public parks and recreational purposes and other compatible public purposes in accordance with the generalized land use plan outlined in the Greater Anchorage Area Borough's Far North Bicentennial Park Master Development Plan of September 1974. Except as provided otherwise in this paragraph, in making the conveyance authorized and required by this paragraph, the Secretary shall utilize the procedures of the Recreation and Public Purposes Act (44 Stat. 741), as amended, and regulations developed pursuant to that Act, and the conveyance of such lands shall also contain a provision that, if the lands cease to be used for the purposes for which they were conveyed; the lands and title thereto shall revert to the United States: *Provided, however,* That the acreage limitation provided by section 1(b) of that Act, as amended by the Act of June 4, 1954 (68 Stat. 173), shall not apply to this conveyance, nor shall the lands conveyed pursuant to this paragraph be counted against that acreage limitation with respect to the State of Alaska or any subdivision thereof.

(3) The Secretary is authorized and directed to make available for selection by the State, in its discretion, under section 6 of the Alaska Statehood Act, 12.4 townships of land to be selected from lands within the Talkeetna Mountains and Koksetna River areas as described in the document referred to in subsection (b).

(e) The Secretary may, notwithstanding any other provision of law to the contrary, convey title to lands and interests in lands selected by Native corporations within the exterior boundaries of Power Site Classification 443, February 13, 1958, to such corporations, subject to the reservations required by section 24 of the Federal Power Act. This conveyance shall be considered and treated as a conveyance under the Settlement Act.

(f) All conveyances of lands made or to be made by the State of Alaska in satisfaction of the terms and conditions of the document referred to in subsection (b) of this section shall pass all of the State's right, title, and interest in such lands, including the minerals therein,

EXHIBIT 12
Page 9 of 12

as if those conveyances were made pursuant to section 22(f) of the Settlement Act, except that dedicated or platted section line easements and highway and other rights-of-way may be reserved to the State.

(g) The Secretary, through the National Park Service, shall provide financial assistance, not to exceed $25,000, hereby authorized to be appropriated, and technical assistance to the Region for the purpose of developing and implementing a land use plan for the west side of Cook Inlet, including an analysis of alternative uses of such lands.

(h) Village Corporations within the Cook Inlet Region shall have until December 18, 1976, to file selections under section 12(b) of the Settlement Act, notwithstanding any provision of that Act to the contrary.

(i) The Secretary shall report to the Congress by April 15, 1976, on the implementation of this section. If the State fails to agree to engage in a transfer with the Federal Government, pursuant to subsection (a)(1), the Secretary shall prior to December 18, 1976, make no conveyance of the lands that were to be conveyed to the Region in this section, nor shall he convey prior to such date the Point Campbell, Point Woronzof, and Campbell tracts, so that the Congress is not precluded from fashioning an appropriate remedy. In the event that the State fails to agree as aforesaid, all rights of the Region that may have been extinguished by this section shall be restored.

SEC. 13. Section 21 of the Settlement Act is amended by adding the following subsection at the end thereof:

"(f) Until January 1, 1992, stock of any Regional Corporation organized pursuant to section 7, including the right to receive distributions under subsection 7(j), and stock of any Village Corporation organized pursuant to section 8 shall not be includable in the gross estate of a decedent under sections 2031 and 2033, or any successor provisions, of the Internal Revenue Code.".

SEC. 14. (a) The Secretary shall pay, by grant, $250,000 to each of the corporations established pursuant to section 14(h)(3) of the Settlement Act.

(b) The Secretary shall pay, by grant, $100,000 to each of the following Village Corporations:

(1) Arctic Village;
(2) Elim;
(3) Gambell;
(4) Savoonga;
(5) Tetlin; and
(6) Venetie.

(c) Funds authorized under this section may be used only for planning, development, and other purposes for which the corporations set forth in subsections (a) and (b) are organized under the Settlement Act.

(d) There is authorized to be appropriated to the Secretary for the purpose of this section a sum of $1,600,000 in fiscal year 1976.

SEC. 15. (a) The Secretary shall convey under sections 12(a)(1) and 14(f) of the Settlement Act to Koniag, Incorporated, a Regional Corporation established pursuant to section 7 of said Act, such of the subsurface estate, other than title to or the right to remove gravel and common varieties of minerals and materials, as is selected by said corporation from lands withdrawn by Public Land Order 5397 for identification for selection by it located in the following described area:

Township 36 south, range 52 west;
Township 37 south, range 51 west;

EXHIBIT 12
Page 10 of 12

S. 1469—11

   Township 37 south, range 52 west;
   Township 37 south, range 53 west, sections 1-4, 9-12, 13-16, 21-24, north half of 25-28;
   Township 38 south, range 51 west, sections 1-5, 9, 10, 12, 13, 18, 24, 25;
   Township 38 south, range 52 west, sections 1-35;
   Township 38 south, range 53 west, sections 1, 12, 13, 24, 25, 36;
   Township 39 south, range 51 west, sections 6, 7, 16-21, 28-33;
   Township 39 south, range 52 west, sections 1, 2, 11, 12, 13-16, 21-24;
   Township 39 south, range 53 west, sections 26, 33-36;
   Township 40 south, range 52 west, sections 6, 7, 8, 9, 16, 17, 18-21, 27-36;
   Township 40 south, range 53 west, all except sections 20, 29-33;
   Township 40 south, range 54 west, all except sections 35 and 36;
   Township 41 south, range 52 west, sections 4, 8-15;
   Township 41 south, range 54 west, section 3;
   Township 41 south, range 53 west, sections 1, 2, 11, 12, 13 S. M., Alaska, notwithstanding;

The withdrawal of such lands by Public Land Order 5179, as amended, pursuant to section 17(d)(2) of the Settlement Act: *Provided*, That notwithstanding the future designation by Congress as part of the National Park System or other national land system referred to in section 17(d)(2)(A) of the Settlement Act of the surface estate overlying any subsurface estate conveyed as provided in this section, and with or without such designation, Koniag, Incorporated, shall have such use of the surface estate, including such right of access thereto, as is reasonably necessary to the exploration for and the removal of oil and gas from said subsurface estate, subject to such regulations by the Secretary as are necessary to protect the ecology from permanent harm.

The United States shall make available to Koniag, its successors and assigns, such sand and gravel as is reasonably necessary for the construction of facilities and rights-of-way appurtenant to the exercise of the rights conveyed under this section, pursuant to the provisions of section 601 et seq., title 30, United States Code, and the regulations implementing that statute which are then in effect.

(b) The subsurface estate in all lands other than those described in subsection (a) within the Koniag Region and withdrawn under section 17(d)(2)(E) of the Settlement Act, shall not be available for selection by Koniag Region, Incorporated.

SEC. 16. Within ninety days after the date of enactment of this Act, the corporation created by the enrolled residents of the Village of Tatitlek may file selections upon any of the following described lands:
Copper River Meridian
   Township 9 south, range 3 east, sections 23, 26, 31-35.
   Township 10 south, range 3 east, sections 2-27, 34-36.
   Township 11 south, range 4 east, sections 5, 6, 8, 9, 16, 17, 20-22, 27-29, 33-35.
   Township 9 south, range 3 east, sections 3-6, 9-11.
   Township 9 south, range 3 east, sections 14-16, 21, 22, 27, 28.
The Secretary shall receive and adjudicate such selections as though they were timely filed pursuant to section 12(a) or 12(b) of the Settlement Act and were withdrawn pursuant to section 11 of that Act.

EXHIBIT 12
Page 11 of 12

S. 1469—12

The Secretary shall convey such lands selected pursuant to this authorization which otherwise comply with the applicable statutes and regulations. This section shall not be construed to increase the entitlement of the corporation of the enrolled residents of Tatitlek or to increase the amount of land that may be selected from the National Forest System. The subsurface of any land selected pursuant to this section shall be conveyed to the Regional Corporation for the Chugach Region pursuant to section 14(f) of the Settlement Act.

SEC. 17. Section 22(f) of the Settlement Act is amended to provide as follows:

"(f) the Secretary, the Secretary of Defense, the Secretary of Agriculture, and the State of Alaska are authorized to exchange lands or interests therein, including Native selection rights, with the corporations organized by Native groups, Village Corporations, Regional Corporations, and the corporations organized by Natives residing in Juneau, Sitka, Kodiak, and Kenai, all as defined in this Act, and other municipalities and corporations or individuals, the State (acting free of the restrictions of section 6(i) of the Alaska Statehood Act), or any Federal agency for the purpose of effecting land consolidations or to facilitate the management or development of the land, or for other public purposes. Exchanges shall be on the basis of equal value, and either party to the exchange may pay or accept cash in order to equalize the value of the property exchanged: *Provided*, That when the parties agree to an exchange and the appropriate Secretary determines it is in the public interest, such exchanges may be made for other than equal value.".

SEC. 18. Except as specifically provided in this Act, (i) the provisions of the Settlement Act are fully applicable to this Act, and (ii) nothing in this Act shall be construed to alter or amend any of such provisions.

*Carl Albert*
Speaker of the House of Representatives.

*Lee Metcalf*
~~Vice President of the United States and~~ Acting President of the Senate *pro Tempore*.

APPROVED

JAN 2 - 1976

*Gerald R. Ford*

EXHIBIT 12
Page 12 of 12